FRANCES CORNELIA BARBER

*v.*

FRANK S. ALLEN.

*Opinion filed October 24, 1904.*

1. EASEMENTS—*rule where a deed reserves passageway where none has previously existed.* In construing a deed reserving a passageway over lots without defining its extent, if no way has previously existed it will be held that such a way was in contemplation as is reasonably necessary and proper for the intended uses.

2. SAME—*when the extent of alley-way is a question of fact.* Where a deed reserves a "good and sufficient private alley-way over and across the west end of the lots hereby conveyed, for the use and accommodation of the store lots," without specifying width, the width of the alley-way reserved is a question of fact to be determined from the testimony of witnesses conversant with the requirements of the case.

3. SAME—*when reservation of alley-way includes enjoyment of light and air.* A reservation of a good and sufficient "private alley-way," to be perpetually maintained, includes the unobstructed enjoyment of light and air, although, as a general rule, a reservation of light and air must be express.

APPEAL from the Circuit Court of Will county; the Hon. CHARLES B. GARNSEY, Judge, presiding.

DWIGHT C. HAVEN, for appellant.

DONAHOE & McNAUGHTON, for appellee.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

This is an appeal from the circuit court of Will county to reverse a decree of that court entered upon a bill filed by the appellant and other complainants against the appellee. The master, in his report, found in favor of complainants upon all material allegations and recommended a decree as prayed for. On exception to the report of the master part of his findings of fact were modified, and the relief granted was the

establishing of a private alley or passageway, as appurtenant to the property of appellant and her co-complainants, of twelve feet in width when the prayer was for one eighteen feet in width. The chancellor also seemed to entertain the view that the evidence of certain witnesses summoned and testifying on behalf of complainants was not material, and taxed the costs of their attendance, service and the taking of their testimony, and $15 of the general costs, to the complainants. A joint and several prayer for appeal was granted, and appellant prosecuted this appeal, complaining of the act of the court in sustaining the exceptions to the master's report and the order as to costs.

Appellee has filed no brief in this cause or taken any notice of this appeal. The statement of the case as made by appellant will, under the rules of this court, be accepted as correct, and the propositions of law urged by appellant will be applied to the facts as stated.

From appellant's statement it appears that on September 6, 1880, Halsey W. Stillman, a resident of New York State, was the owner of eighty-eight feet of ground fronting east on Chicago street, in the city of Joliet. The property was bounded on the south by VanBuren street. The depth of the lots was from east to west in that block, one hundred and fifty feet, but the south sixty-six feet of the land owned by Stillman extended back only one hundred and eighteen feet, and the north twenty-two feet extended clear through from Chicago street to a public alley. The west thirty-two feet of the south sixty-six feet belonged to one Murray, so that the south sixty-six feet of Stillman lacked thirty-two feet of extending to the alley, and had no means of approach at the rear except by passing in over the end from VanBuren street. At the date above named Stillman conveyed to Hannah E. Campbell a tract of twenty-two feet front width on Chicago street and lying next to VanBuren street, and of the depth of one hundred and eighteen feet, and on the same date conveyed to her husband, Dr. Merritt B. Camp-

bell, a like strip of twenty-two feet fronting on Chicago street and extending west one hundred and eighteen feet to the Murray tract and adjoining the tract conveyed to Mrs. Campbell on the north. After these conveyances were made Stillman had remaining two tracts of twenty-two feet frontage each, one lying next to Campbell on the north, extending back one hundred and eighteen feet, and a twenty-two foot tract still further north, extending back to the alley. In each of the deeds to Campbell, immediately following the description of the lands conveyed, and as a part of it, was the following exception and reservation: "But hereby expressly excepting and reserving the right of use of a good and sufficient private alley-way over and across the west end of the lot hereby conveyed, for the use and accommodation of the store lots lying on the north side thereof, which alley-way shall be forever kept open and maintained for said purposes." Both these deeds were promptly placed of record, and Campbell subsequently conveyed his lot to his wife.

In the spring or summer of 1881 Mrs. Campbell erected on this property, at the corner of Chicago and VanBuren streets, a three-story brick building with a frontage of forty-four feet. The south half of the building extended back west one hundred feet and the north half of the building extended back west eighty feet. There was no entrance to the third floor of this building from the front, and for the purpose of gaining access to that floor Mrs. Campbell had constructed a temporary and outside stairway. This stairway began at the west end of her building that lay along Van-Buren street and about two feet back north from the street, and was carried north upon wooden posts for support across the west end of the building that extended west one hundred feet, and was then turned east along the north side or wall of her building that projected farthest west until the stairway reached the third floor of the building that extended only eighty feet west. Where the stairway started from the street there was a sort of brick arch or entrance way. Origi-

nally the stairway seems not to have been covered, but it was afterwards covered overhead and remained open underneath.

While the Campbell's owned the property, they, together with Stillman, subdivided the Campbell property and the Stillman tract that extended back only one hundred and eighteen feet, into three lots or sub-lots, and as they lay, counting from south to north, sub-lot 1, being the lot bought by Mrs. Campbell, lay next to VanBuren street; lot 2 lay next north, and was the lot bought by Dr. Campbell, and lot 3 was retained by Stillman and was the most northerly lot of the subdivision. Each of these lots, by the subdivision, had a frontage of twenty-two feet on Chicago street and a depth of one hundred and eighteen feet. Subsequently Mrs. Campbell extended her building that was only eighty feet in depth, by building to the west thereof a one-story building extending back west twenty feet, so that the west end of her building as thus extended was forty-four feet north and south and one hundred feet west from Chicago street. It also appears that prior to the building of the stairway across the west end of the south half of her building she had constructed an ash-pit that extended four or five feet west of the building, and having a brick or stone top, and that the posts supporting the stairway rested upon the ash-pit.

When Stillman sold to the Campbells he reserved some old buildings that were on the property they bought, and moved them on to his lots lying north of the Campbell lots, and placed them so that they fronted upon Chicago street, where they were fitted and leased for business purposes. One of the old buildings was moved to the west end of sub-lot 3 belonging to Stillman, and was used for a barn for a number of years from 1881, and latterly as a warehouse, access to it being had from VanBuren street over the disputed tract in question. About the year 1892 appellee, Allen, purchased the property formerly owned by Mrs. Campbell. The deeds from the Campbells and the deeds to Allen all contained references to and were subject to the reservation in

the deeds from Stillman to the Campbells. Allen afterwards caused to be constructed at the west end of that part of the building that was only one story, an outside cellar-way, which extended into the disputed strip about six feet.

The bill in this case was filed January 22, 1901. Shortly prior to the filing of the bill appellee began the preparation for extending the building on his lots back practically the full depth of the premises, and tore out the temporary stairway that was along the west end of his building and leading to the third story, and began to make excavations and bring to the premises material for his extension. In the bill, complainants, who by inheritance and purchase succeeded to the title of Halsey W. Stillman, and the present owners of the Stillman tracts, set out the foregoing facts, and alleged that a passageway of eighteen feet in width between the Murray property and the building on appellee's property was in contemplation of the grantor and the grantees at the time of the conveyances by Stillman to the Campbells; that though no particular width was described, the parties intended, and the deeds should be construed to mean, that an alley-way and passageway of a sufficient width to permit delivery wagons and drays to reach business houses that should be constructed on sub-lot 3, and the lot lying north thereof, and deliver goods and freight and turn and pass out, should be held to be reserved and excepted from the conveyances.

A number of witnesses testified, on behalf of the complainants, as to the necessary width of such a passageway, and no witness fixed the width at less than sixteen feet, and most of them from eighteen to twenty-two feet. We think the overwhelming weight of the evidence shows that a passageway eighteen feet in width was the least that would serve the purpose for which it is claimed the reservations were made, and that if the deeds are to receive the construction contended for by the complainants in the bill, the findings of the master in that regard should have been sustained. The record shows that the property is in the principal business

district of the city of Joliet, within one block of the court house and in less than two blocks of all the banks and principal business establishments of the city; that the property surrounding appellant's property is, and has been for years, all built up with business blocks, most of them three or more stories high, and that the reason appellant's property has not been so built up is that Halsey W. Stillman, the original owner thereof, executed a life lease to his sister, a Mrs. House, and to her husband, which only terminated in 1897. Stillman, the original owner, lived in another State, and there is no act or agreement of his that justifies the placing of a different construction upon the deeds made by him to the Campbells than that contended for by appellant, although the acts of the Campbells in the building of the temporary stairway and the ash-pit during their holding, and of appellee by extending his cellar-way west of the Campbell building and into the disputed strip, would tend to show that they placed a narrower construction upon the reservation than is contended for by appellant, yet it did not lie within their power, alone, to so use the property or to so improve the same, without the consent of the owners of the Stillman tracts, as to change the legal effect of the deeds, unless such acts extended over a sufficient period to bar the rights of appellant and those claiming with her. No such length of time of adverse enjoyment or adverse claim is shown by this record as gives to appellee a title to the passageway intended by the parties, to the exclusion of the rights of complainants to the reservations in the deeds, nor is there anything shown that would operate as an estoppel against appellant or her co-complainants, or those with whose title they are in privity.

It is also contended by appellant that as the reservation of a private alley-way, contained in the Stillman deeds, is unrestricted in its terms, it includes not only the right of passage, but also the right to use the same for light and air, which latter rights are said to be quite as important to the property for the benefit of which the reservation is made,

as is the right of passage. We are thus brought to the consideration of the meaning and legal effect of the deeds from Stillman to the Campbells.

The cardinal rule in the construction of written contracts is to ascertain the intention of the parties. Where the language of the contract is so specific that the intention may be found in the instrument, then that intention as thus expressed must control; but where the language is doubtful and the grant or reservation is clear and certain, the extent or limit of the grant may be ascertained by inquiring into the circumstances of the parties, the condition of the property to be affected, and the uses to which it was put or was in contemplation of the parties at the time of the making of the grant or reservation. It sometimes happens that where a right of way is granted or reserved, there has existed at the place, prior to the grant or reservation, a way that has been used for the purposes mentioned or intended in the deed, and in such circumstances the limits of the way then existing are frequently adopted as the limits of the way thus granted or reserved. (*Dickenson* v. *Whiting,* 141 Mass. 417; 8 N. E. Rep. 92.) But in those cases where there has existed no previous passageway or way that can be regarded as in contemplation of the parties, then the intention of the parties must be determined by the condition of the property and the uses to which the property is to be put, and it will be held that such a way was in the contemplation of the parties as was reasonably necessary and proper for the intended uses. *Atkins* v. *Bordman,* 2 Metc. 457; 37 Am. Dec. 100.

In looking to the reservation in the case at bar it is found that an alley-way is reserved for the use and accommodation of the store lots lying on the north side of the granted premises, and that this alley-way is to be forever kept open and maintained for said purposes. We find, then, from the instrument itself, that it was in the contemplation of the parties that the lots owned by the complainants in the bill were to be used for stores and for mercantile purposes, and that the way

that is to be maintained is to be a sufficient private alley-way for the use and accommodation of these stores. This is as far as the instrument itself advises us as to what was the intention of the parties. From the evidence it is learned that the property in question was in the business center of an important city, and that the store lots for whose benefit the alley-way is reserved, front upon a public street in that city. From these facts we may properly conclude that the parties contemplated that a mercantile business should be conducted on these lots, and that those having dealings as purchasers and patrons of the stores thus maintained upon these lots would ordinarily have access to them from Chicago street, upon which they fronted, and that, therefore, the idea that was in the minds of the parties to the instrument was, not that an alley-way should be reserved in order that the patrons of those stores might have access to them for ordinary dealings, but that the parties may have had in their minds some other and different purpose. It is a matter of common knowledge that in the conducting of a mercantile business the goods received by the proprietor come in bulk, and are usually, where such method can be availed of, unloaded and received at some rear portion of the building,—most commonly at a public alley-way; but we find in the case before us that one of the lots retained by the grantor in the deed in question was not accessible from any public alley, and therefore we are led to the view that the parties had in mind a way suitable for the delivery of goods and merchandise by the methods usually obtaining in all cities. These methods are shown by the evidence to be by drays and express and delivery wagons, and the conclusion must reasonably follow that such was the purpose of the reservation.

Having then before us the reservation and its purpose, the question remains as to the extent of the way necessary for the accommodation of such use. The deeds locate the way at the west end of the lots granted but do not define its width, but as the reservation is clear and certain and the pur-

poses reasonably susceptible of ascertainment, we are quite satisfied that the width of the alley-way or passageway that was in contemplation of the parties was such as would be necessary,—in the words of the reservation, such as was "good and sufficient for the use and accommodation of the lots." That question then became one of fact, to be determined by calling those who were conversant with the requisites of a way that would be good and sufficient for the accommodation of such uses, and such evidence was offered and admitted before the master, and, as we have said, clearly showed that a way of at least eighteen feet in width was necessary for the purpose of the reservation.

Whether the complainants in the bill were entitled to the way for the uses of light and air must, as we think, depend upon the character of the right that was granted. No such purpose is expressed in either of the deeds, and unless the way itself shall be deemed to be such a way as carries with it the right of light and air which the property holder may enjoy as an incident to the way, it cannot be said to be included in the grant. The rule seems to be, that the reservation of light and air for the use of buildings will not be implied, but must, ordinarily, be expressed; but if the alley-way or a right of way be granted, there must be no such interference with the light and air as would prevent the proper use of the alley-way or right of way thus granted. If the thing itself, —that is, the alley-way, as a distinctive body of land,—is granted or reserved, then, of course, the person for whose use the grant or reservation is, has the right to the enjoyment of the light and air without obstruction from earth to heaven; but if there be but a passageway, only, then the restriction is that there must be no such deprivation of the light and air as would interfere with the use of the way. (*Grafton* v. *Moir*, 130 N. Y. 465; 27 Am. St. Rep. 534.) In the case at bar there seems to be a purpose to reserve an alley-way, which is designated by the reservation as a private alley-way, as contradistinguished from the mere right of pas-  .

sage or the use of a way for the purposes mentioned, and this right, according to the provisions of the reservation, is to be a perpetual right and is to be forever maintained, and we are of the opinion that with such reservation, and as incident to it, is the unobstructed enjoyment of light and air. *City of Chicago* v. *Borden,* 190 Ill. 430; *Field* v. *Barling,* 149 id. 556; *Horner* v. *Keene,* 177 id. 390.

Such being our view, we hold that the circuit court of Will county erred in sustaining the exceptions to the report of the master as to the width of the alley-way and in its order in regard to costs.

The decree will be reversed and the cause remanded, with directions to the circuit court to enter a decree establishing the alley-way as of the width of eighteen feet, and to enter a decree for complainants in the bill for costs.

*Reversed and remanded, with directions.*