JULIUS KOTICK, et ux., CHESTER A. OSBORN, et ux., ADOLPHUS STEPHENS, et ux., and EPH PHELPS, JR., v. GEORGE A. DURRANT, et ux.

196 So. 802
Division B
Opinion Filed June 18, 1940

*A. N. Spence,* for Apellants;

*J. H. Mercer,* for Appellees.

PER CURIAM.—This appeal is from a final decree permanently enjoining defendants from interfering with plaintiffs' easement over their land and requiring defendants to remove all obstacles interfering with said easement.

George A. Durrant and Catherine C. Durrant, his wife, brought their bill of complaint against Julius Kotick and Carmen Kotick, his wife, Chester A. Osborn and Millicent Osborn, his wife, Adolphus Stephens and Dixie B. Stephens, his wife, and Eph Phelps, Jr., praying that defendants be enjoined from completing the fence involved in controversy, to remove so much of it as impairs plaintiffs' easement, and to restore the land of plaintiffs, which had been disturbed by the erection of said fence, to its natural condition, as far as possible.

The bill of complaint alleged, among other things, that plaintiffs own the following described property:

"Beginning at a point on the West line of County Road 313.06 feet North of NW corner of junction of the prolongation of Biscayne Avenue as proposed, and the County Road on the East boundary of Section 13-53-41; Thence West 146.49 feet to starting point; Thence West 270.93 feet parallel with Biscayne Avenue; Thence South 94.35½ feet parallel with County Road; Thence Easterly 271 feet on slant line; Thence North parallel with County Road 100.51 feet to starting point, containing .6 acres, more or less, less the west 50 feet, an easement is hereby granted on North and South lines of above property for use as a road connecting with County Road."

That said property is located in Miami, Florida, being 220.93 feet long by 101.59 feet wide, and lies 146.49 feet west of N. E. Second Avenue and will be referred to as tract No. 1; that the N½ of the land lying between tract No. 1 and N. E. Second Avenue is owned by Chester A. Osborn and will be referred to as tract No. 2, and the S½ of said land lying between tract No. 1 and N. E. Second Avenue is owned by Adolphus Stephens and Dixie B. Stephens, his wife, and will be referred to as tract No. 3; that the Trustees of the First Baptist Church of Lemon City, on April 6, 1918, owned in fee simple all of tracts No. 1, No. 2 and No. 3, and on said date executed to M. R. Gillette a deed conveying tract No. 1, together with an easement over the North line of tract No. 2 and the South line of tract No. 3, connecting with N. E. Second Avenue, which at that time was the County Road, a certified copy of said deed being made an exhibit and a part of the bill; that plaintiffs by mesne conveyances and muniments of title became the owners of tract No. 1; that on February 15, 1928, a Special Master's Deed was issued to Chester A. Osborn for tracts No. 2 and No. 3; that thereafter on January 25, 1936, tract No. 3 was conveyed to Adolphus Stephens and Dixie B. Stephens, his wife, "subject to any easement of record along the south line of the above described property;" that dwelling · houses are located on plaintiff's land and the tenants therein are threatening to move because of the construction of the fence obstructing their ingress and egress; that the only outlet and inlet to and from plaintiffs' tract No. 1 is over and upon said tracts No. 2 and No. 3; that plaintiffs and their predecessors in title have used said easements continuously, uninterruptedly and adversely for more than 20 years; that said easement was and is appurtenant to the ownership and enjoyment of

plaintiffs' tract No. 1 and dominant upon the ownership and enjoyment of tracts No. 2 and No. 3; that notwithstanding said easement, Julius Kotick did, on April 6, 1938, obtain a city permit to construct a fence immediately east of plaintiffs' tract No. 1, and a fence is now being constructed which runs the entire length of the eastern boundary of plaintiffs' property and cuts off their ingress and egress to and from N. E. Second Avenue; that although plaintiffs have demanded that said defendants cease construction of the fence, they continue with the construction thereof.

. A temporary injunction was granted ordering the defendants responsible for construction of said fence to remove it so far as it obstructs plaintiffs' ingress and egress over and upon the south line of the property lying between plaintiffs' property and N. E. Second Avenue, encumbered by said easement, and further ordering that said defendants be enjoined from obstructing ingress and egress over said easement during the pendency of this suit.

Three answers were filed, one by Julius Kotick and Carmen Kotick, his wife, another by Adolphus Stephens and Dixie B. Stephens, his wife, and another by Chester A. Osborne and Millicent Osborne, his wife. The answers denied the material allegations of the bill of complaint, and the latter two embodied motions to strike and to dismiss.

Motions to strike portions of the answers of the Koticks and the Stephenses were filed by plaintiffs.

The court denied all motions to strike or to dismiss the several pleadings and referred the cause to Hon. John C. Gramling, as special master, to take testimony and report the same together with his findings of law and of fact back to the chancellor.

After hearing all of the testimony, the special master made his report to the court, to which report exceptions

were filed. The exceptions were overruled and the report confirmed in every particular, except that the costs were divided between Adolphus Stephens and Julius Kotick.

The final decree found that plaintiffs are entitled to an eight-foot easement for use. as a road extending from their property to N. E. Second Avenue, in Miami, Florida, the south line of said easement being a prolongation of the south line of said property; that plaintiffs are entitled to an eight-foot easement for use as a road extending from plaintiffs' property to N. E. Second Avenue, in Miami, Florida, the north line of said easement being a prolongation of the north line of said property; that defendants are forever enjoined from obstructing said easements, and defendants Julius Kotick and Adolphus Stephens are required forthwith to remove all obstacles obstructing free ingress and egress over and upon said easements.

Petition for rehearing was denied. Then this appeal was taken.

The only real material question to be determined here is whether the pleadings and the evidence are sufficient on which to predicate the final decree finding that plaintiffs have an easement eight feet in width over the north line of tract No. 2 and over the south line of tract No. 3.

On April 6, 1918, at the time the trustees of the First Baptist Church of Lemon City deeded tract No. 1 to M. R. Gillette, the Baptist Church owned tracts No. 1, No. 2 and No. 3. Tract No. 1 was entirely surrounded by other property, not abutting on any street or thoroughfare. Because of the situation of tract No. 1, it would have been necessary to have given the purchaser thereof an easement over the land owned by the church connecting with the County Road, if one had not been given by the deed conveying the property. However, instead of leaving the way to be acquired

by necessity or by prescription the parties provided in the deed for an easement "on north and south lines of above (plaintiffs') property for use as a road, connecting with County Road." It is true that the grant failed to state that the easement went "over and upon" the property of the church; but the description of the dominant estate (tract No. 1) in the deed shows that the tract No. 1 is 146.49 feet west of the County Road, and the easement given connects the north and south lines of the dominant estate (tract No. 1) with the County Road, which easement must of necessity traverse the intervening land, tracts No. 2 and No. 3. The easement is located by prolonging the north and south boundaries of tract No. 1 to the County Road. The practical interpretation by usage put upon the grant, shows that the parties intended to use generally the same road that had been used by members of the church prior to the grant, and concerning which usage there was ample evidence to support the finding of the chancellor.

"The determination of the extent and nature of an easement granted or reserved in express terms by deed depends upon a proper construction of the language of the instrument, from an examination of all the material parts thereof, and without consideration of extraneous circumstances, where the language is unambiguous. But as in the construction of deeds generally it is the duty of the court to ascertain and give effect to the intention of the parties, and for this purpose it may consider the situation of the property and of the parties, and the surrounding circumstances at the time the instrument was executed; also a practical construction of the instrument given by the parties themselves by their conduct or admissions will be considered in determining the intent of the parties if the meaning of the instrument is doubtful." 19 C. J. 907, Sec. 94.

In Gale's Work on Easements we find the following with relation to construction of grants of easements:

"The construction of a deed is always for the court; but, in order to apply its provisions, evidence is in every case admissable of all material facts existing at the time of the execution of the deed, so as to place the court in the situation of the grantor. In deeds, as well as wills, the state of the subject at the time of execution may always be inquired into; and as with respect to ancient deeds the state of the subject at their date can seldom, if ever, be proved by direct evidence, modern usage and enjoyment for a number of years is evidence to raise a presumption that the same course was adopted from an earlier period, and so to prove contemporaneous usage and enjoyment at the date of the deed. These deeds are to be construed by evidence of the manner in which the subject has been possessed or used; for as Lord Coke observes, 'optimus interpres rerum usus' (2 Ins. 282; Weld v. Hornby, 7 East 199; Beaufort v. Swansea, 3 Exch. 413). Lord Hardwicke, with reference to the construction of ancient grants and deeds, says, 'There is no better way of construing them than by usage, and contemporanea expositio is the best way to go by.' That was in the case of A. G. v. Parker (1 Ves. 43; 3 Atk. 576.) Lord St. Leonards follows in A. G. v. Drummond (1 Dru. & War. 368), and says one of the most settled rules of law is that you may resort to contemporaneous usage for the meaning of a deed. 'Tell me what you have done under such a deed, and I will tell you what the deed means.'" Gale on Easements (9th ed.) 79.

The validity of an easement of way over the land of another is not impaired, although not defined by metes and bounds in the instrument by which it is created, the dominant tenant being entitled to a convenient and suitable way,

depending on the conditions of the place and the purposes for which it was intended. McKenney v. McKenney, 216 Mass. 248, 103 N. E. 631. Failure to describe the boundary of a right of way in granting an easement does not render the grant void. U. S. v. Van Horn, 197 Fed. 611. It sometimes happens that, where a right of way is granted there has existed at the place, prior to the grant, a way that has been used for the purposes mentioned or intended in the deed, and in such circumstances the limits of the way then existing are frequently adopted as the limits of the way thus granted. See Barber v. Allen, 212 Ill. 125, 72 N. E. 33; Dickinson v. Whiting, 141 Mass. 417, 6 N. E. 92.

In view of all the surrounding circumstances connected with the use of the way over tracts No. 2 and No. 3, and the grant of the easement contained in the deed, there was ample basis for the finding by the chancellor that an easement to be used as a road had been given according to the provisions of the grant from tract No. 1 to the County Road.

It is not necessary to describe in the bill of complaint the servient tenements by metes and bounds, if the allegations of the bill sufficiently identify and locate the property and the way so that they can be definitely located. The dominant tenement (tract No. 1) was described by metes and bounds in the deed and in the bill of complaint. The easement was along the north and south boundaries of tract No. 1, which when prolonged westward connected with the County Road, which it is alleged crossed tracts No. 2 and No. 3. The servient tenements and the easement could both be located from the allegations contained in the bill. No point is made in this case that the way across the intervening land between tract No. 1 and the County Road would

fall on any land other than Tracts No. 2 and No. 3, when the north and south boundaries of tract No. 1 were extended to the County Road, as provided in the grant. Neither is any contention made that the road used by members of the church and later used by the purchaser of tract No. 1 fell outside the boundaries of tracts No. 2 and No. 3. The bill alleges and there is ample evidence to sustain the allegations that the N½ and the S½ of the land lying between plaintiffs' land and N. E. Second Avenue are tracts No. 2 and No. 3 respectively. From April 6, 1918, until March 18, 1925, plaintiffs' predecessors in title owned tract No. 1 and the church owned tracts No. 2 and No. 3, and no complaint was ever made about the easement granted, or that it did not exist, or the practical interpretation put upon the grant by usage. On the latter date Chester A. Osborn purchased tracts No. 2 and No. 3, and on January 25, 1936, the Osborns conveyed tract No. 3 to Adolphus Stephens and Dixie B. Stephens, his wife. The latter conveyance was made subject to any easement of record along the south side of said property. Plaintiffs acquired tract No. 1 in 1934. The long, continued use by plaintiffs' predecessors in title and the acquiescence of the owner of the servient tenements (the Baptist Church) of the right of way over tracts No. 2 and No. 3, and the fact that the subsequent purchasers of the property took subject to this easement, because it was of record, would seem to raise an estoppel against defendants to deny that the deed gave to the owner of tract No. 1 the easement in question.

The purpose of this bill of complaint was not to declare an easement, but to have obstructions removed from an existing easement, and to prevent further obstruction of said easement. The width of eight feet allowed by the court is not excessive, and there is evidence to sustain the

finding that that was about the width of the easement used by the parties and accepted under the grant as the way across the servient tenements.

The fact that plaintiffs later purchased two lots north of and contiguous to tract No. 1, over which it was possible to construct a way to N. E. 60th Street on the north of the property, would not interfere with the easement secured by grant on the west of the property connecting with N. E. Second Avenue, which easement had never been voluntarily abandoned.

No question can be raised as to whether it is equitable to give both of these outlets to N. E. Second Avenue, because both are contained in the grant by deed. The parties in setting the consideration to be paid for the property are presumed to have taken into consideration the value of the two ways across the land and the burden that it would be to the servient tenements. The equity courts will not nullify the contract of the parties.

No error is made to appear in that part of the final decree dividing the costs between the owner and the lessee of the tract upon which the barricade or obstruction to the plaintiffs' easement was constructed.

No error of law or procedure having been made to appear the decree below is accordingly affirmed.

Affirmed.

WHITFIELD, P. J., BROWN and CHAPMAN, J. J., concur.

BUFORD, J., concurs in opinion and judgment.

Chief Justice TERRELL and Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.