CLARENCE H. PETERS, Plaintiff-Appellant, v. MILKS GROVE SPE-CIAL DRAINAGE DISTRICT No. 1, Defendant-Appellee.

Third District   No. 3—92—0413

Opinion filed April 1, 1993.—Rehearing denied May 3, 1993.

Petersen, Deck, Ruch & Baron, of Kankakee (Charles E. Ruch, Jr., of counsel), for appellant.

Terry D. Hamrick, of Urbana, for appellee.

PRESIDING JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiff, Clarence Peters (Peters), appeals from the judgment of the circuit court of Iroquois County denying his motions for a preliminary and permanent injunction enjoining Milks Grove Special Drainage District (the District) from enlarging its easement across his property and for an order requiring the District to repair a bridge located on his property.

The District dredged its drainage ditch which crossed Peters' property. As a result of the dredging, the District deposited newly excavated soil beyond the boundaries of the District's old spoil bank. The District failed to prove the location or width of its easement. Ac-

cordingly, we hold that, absent a written grant defining the location and width of the District's easement across Peters' property, the easement was limited to the extent of the District's prior actual use. We find that the District has exceeded the prior actual use of its easement and has taken 1.65 acres of Peters' land for public use without paying just compensation. Peters' land was valued at $2,500 per acre. Consequently, the District must pay Peters $4,125.

Next, we examine the condition of the bridge which spans the District's drainage ditch. We find that the District has an absolute duty to maintain the bridge in a good state of repair. The Illinois Drainage Code (Drainage Code) (Ill. Rev. Stat. 1991, ch. 42, par. 12—5) requires the District to maintain the bridge which spans the drainage ditch because it was the sole means of access from one landlocked portion of Peters' property to the other portion of the farm. We conclude that the adjoining landowners' grant of an easement, which was not accepted by Peters, did not relieve the District of its legal obligation to maintain the bridge.

Therefore, for reasons which follow, the judgment of the circuit court of Iroquois County is reversed in part, affirmed in part, and judgment is hereby entered in favor of Peters and against the District in the amount of $4,125.

Peters and his family have farmed the land in question for over 50 years. The District has an easement for a drainage ditch which runs generally in an east-west direction across Peters' property. For the past 50 years, the District has never cleaned the ditch which crosses Peters' property. The berm of the ditch became forested over the years and was generally used as a wildlife preserve. Peters testified that even following a heavy rain, the ditch cleared within a day or two and never overflowed its banks. Peters said he never observed any flooding which would require the District to clean the drainage ditch.

In 1990, the District embarked on a major dredging program. Before the dredging began, Peters asked one of the District's commissioners not to do any dredging on his land and at the very least not to remove any trees located on the south bank of the ditch. That spring, Peters discovered dredging equipment on his property. Edward Hackl, Jr., was the District's dredging contractor. Hackl used a drag line to dredge the ditch and clearcut the berm. He testified that the District's commissioners told him they had a 200-foot-wide easement across Peters' land. Hackl said the commissioners led him to believe that he could use whatever area was necessary to complete the work on Peters' property.

Before Hackl completed the work, Peters filed a motion for preliminary injunction to prevent further dredging on his land. On May 18, 1990, the trial court granted Peters only part of the injunctive relief he sought. The court limited the District to using only that portion of Peters' property which was located next to the ditch. The court further limited the District to use only as much of the land as was reasonably necessary to complete the cleaning and dredging.

Ultimately, Hackl removed and burned over 2,000 trees, and cleared all brush and grass from the north and south banks. He hauled silt from the drainage ditch and put it on Peters' property. Hackl dumped and spread the silt on land which was being farmed by Peters. Following the dredging, the slopes of the ditch, which previously were stabilized by vegetation, eroded badly. Peters and David Noble, a licensed civil engineer, testified that the District's spoil bank was expanded on both sides of the old spoil bank. Noble testified that the north spoil bank was expanded an average width of nine feet and the south spoil bank was expanded an average width of 17.5 feet. Noble used a survey to show how the District had taken 1.65 acres of Peters' property. Noble's testimony was uncontradicted, and his survey was admitted into evidence.

The powers and duties of drainage districts and their commissioners are found in the Drainage Code (Ill. Rev. Stat. 1991, ch. 42, par. 1—1 et seq.). The commissioners are under the general supervision of the circuit courts of the county in which the district is organized. (Ill. Rev. Stat. 1991, ch. 42, pars. 4—19 through 4—24, 4—27 through 4—29, 4—32.) The circuit court has the power to settle disputes between the commissioners and any landowner of the district concerning: (1) the nature and extent of the drainage system; (2) the commissioners' duty to provide drainage to district lands; (3) protecting landowners from overflow; and (4) keeping the drainage system in repair. Either the landowner or the commissioners may petition the circuit court to specify and define the commissioners' duties and obligations. Ill. Rev. Stat. 1991, ch. 42, par. 4—26.

Commissioners have broad powers to carry out a district's purposes, among them: to do all acts needed to survey, construct, alter, enlarge, protect, repair and maintain its drainage works; to go upon, examine and survey lands within or outside the district in connection with its work, "doing no more damage than the occasion may require"; and after constructing drainage works, to enter onto those lands "forever thereafter" to protect, maintain and repair them. Ill. Rev. Stat. 1991, ch. 42, par. 4—14.

The commissioners may "without prior authorization of the court, use corporate funds of the district for the repair, maintenance, operation or improvement of drains, levees, pumping plants and other works of the district *when such repair, maintenance, operation or improvement does not involve any substantial or material alteration, enlargement or extension.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 42, par. 4—15.

Also, the commissioners are bound to protect environmental values. "[T]he commissioners shall use all practicable means and measures, including consideration of alternative methods of providing the necessary drainage, to protect such environmental values as trees and fish and wildlife habitat, and to avoid erosion and pollution of the land, water or air." Ill. Rev. Stat. 1991, ch. 42, par. 4—15.1.

In *Wessels v. Colebank* (1898), 174 Ill. 618, 51 N.E. 639, the supreme court construed the original Farm Drainage Act. The court held that the right to have a drainage ditch maintained and to have water flow through it unobstructed is a permanent one, binding upon the owners of the land and their grantees. The supreme court further held "the common law annexes to the easement of a drain in another's land the right to go upon such land and clean out or repair such drain without doing *unnecessary injury to the land.*" *Wessels*, 174 Ill. at 625.

It is undisputed that the District's easement across Peters' property dates to 1885, when the commissioners paid the prior owners for the easement. It is the extent of the District's easement that is at issue here. The District claims its easement is 200 feet wide because that is the width of the District's recorded easements. While the District presented evidence concerning the scope of its recorded easements, we find no evidence introduced concerning the actual dimensions of the easement across Peters' property. We can only conclude, based on the record, that the deed conveying the District's easement was either lost or not recorded.

Peters argues that the District must prove the location and width of its easement because it restricts his fee simple rights. We agree. Peters asserts that the District's easement is limited to the extent of its prior actual use because the District did not prove the dimensions of its easement. Again, we agree.

*Vallas v. Johnson* (1979), 72 Ill. App. 3d 281, 390 N.E.2d 939, concerns a recorded easement lacking in defined width. In *Vallas,* we concluded that the width of an easement is confined to the dimensions which are reasonably necessary for the purposes for which it is created, as established by actual use. Therefore, where an easement

granted by deed is undefined as to its location and width, the dimensions depend upon the intent of the parties, which can be shown by the extent of the actual use. Consequently, " '[w]hen the character of [the] easement is once fixed, no material alterations can be made by either the servient or easement owner without the other's consent.' " *Vallas*, 72 Ill. App. 3d at 284, 390 N.E.2d at 942, quoting 25 Am. Jur. 2d Easements §87 (1966).

Our decision in *In re Onarga, Douglas & Danforth Drainage District* (1989), 179 Ill. App. 3d 493, 534 N.E.2d 226, is precedent for deciding the issue before this court. In *Onarga*, the district sought to enlarge drainage tile across land where its easement arose by prescription. In the instant appeal, we have found that the District enlarged its easement by spreading newly excavated soil from the dredging beyond the boundaries of the existing spoil bank. In *Onarga*, we concluded that the drainage district could not unilaterally and without the landowner's consent increase the burden of an easement on the servient tenement. We held in *Onarga* that the district's easement was restricted to the extent of its actual use. In *Onarga*, we reasoned as follows:

"[C]ourts of review in our State have been loath to increase the usage to which an easement is put even [though] the proposed use is relative to the original purpose of a constituted easement. [Citations.]

\*\*\* This court has held that \*\*\* the extent of the \*\*\* use defines the easement." *Onarga*, 179 Ill. App. 3d at 494-95, 534 N.E.2d at 228, citing *Vallas*, 72 Ill. App. 3d 281, 390 N.E.2d 939.

■ In this case, the trial court determined that the District's contractor conducted himself in a reasonable manner and found there was no credible evidence to sustain an award of damages. We find the trial court's determination was contrary to the manifest weight of the evidence. The trial court erroneously ruled that "the right-of-way must be co-extensive with the District's obligations to clean and maintain the ditch." We hold that our decisions in *Vallas* and *Onarga* control. Accordingly, the District's easement was limited to the extent of the prior actual use. Since the District is a public agency, it is prohibited by the fifth amendment of the United States Constitution from taking private property for public use without paying just compensation.

The fifth amendment was recently examined by the United States Supreme Court in *Lucas v. South Carolina Coastal Council* (1992), 505 U.S. ____, 120 L. Ed. 2d 798, 112 S. Ct. 2886. While the *Lucas*

decision concentrates on regulatory takings, the Supreme Court set forth standards for compensation in any case where private property is taken for public use. Situations in which just compensation is required to be paid include direct physical appropriation of property and "regulations that compel the property owner to suffer a physical 'invasion' of his property. In general (at least with regard to permanent invasions), no matter how minute the intrusion, and no matter how weighty the public purpose behind it, we have required compensation." (*Lucas*, 505 U.S. at ___, 120 L. Ed. 2d at 812, 112 S. Ct. at 2893.) The Supreme Court also noted that the impairment of certain noneconomic interests in land, such as the interest in excluding strangers from one's land, "will invite exceedingly close scrutiny under the Takings Clause." *Lucas*, 505 U.S. at ___ n.8, 120 L. Ed. 2d at 815 n.8, 112 S. Ct. at 2895 n.8.

■ Based on the *Lucas* standard, Peters is entitled to just compensation from the District. Peters has been deprived of 1.65 acres of land which was taken by a public agency for public use. We find uncontradicted evidence that Peters' property was worth approximately $2,500 per acre. Therefore, we fix Peters' just compensation at $4,125.

■ Peters also testified that Hackl's heavy equipment compacted the soil near the drainage ditch and reduced his crop productivity. His son, Larry Peters, estimated that the compaction caused an average loss of nine bushels per acre. However, Peters maintained no records to support his estimate. Also, Peters offered no expert testimony on the issue. Therefore, we affirm the trial court's finding that Peters' testimony was too speculative to support an award of damages for crop loss.

■ Jeffrey Sniadach of the United States Army Corps of Engineers testified that he inspected the ditch following the dredging. He noticed significant erosion along the sides of the ditch. We note that severe erosion is apparent from the photographs admitted into evidence. The erosion, caused by the dredging, indicates a cavalier attitude toward the District's statutory duty to protect environmental values and avoid erosion of the land. (Ill. Rev. Stat. 1991, ch. 42, par. 4—15.1.) However, we find that Peters presently does not have a legal remedy to stop the erosion. The interior banks of the drainage ditch are unquestionably within the boundaries of the District's easement. Therefore, since the erosion is currently only on District property, Peters has suffered no actual damage to his property.

The final issue on appeal is whether the District must maintain a bridge across the ditch in order to provide Peters access to a land-

locked portion of his property. When Peters filed his complaint, the bridge was his only means of access to approximately 17 acres of land located north of the ditch. As a result of the District's failure to perform routine maintenance, the bridge became unsound. Additionally, there was testimony indicating that dredging the ditch caused damage to the bridge's footings and foundation. Photographic evidence indicates that parts of the bridge's footings and foundation have either washed away or broken off as a result of erosion. Also, Larry Peters testified that the center portion of the bridge is swaybacked and unsafe. The evidence was clear that the bridge is unsafe.

After the litigation was filed in the trial court, adjoining landowners granted a purported easement to Peters for access across their property to the landlocked portion of his farm. Marilyn Rosenboom, one of the grantors, is also a District commissioner. The easement was recorded on October 21, 1991, nine months after Peters filed suit. Mrs. Rosenboom admitted that the District paid her and her family consideration for executing the easement. Under the terms of the easement, Peters was required to maintain the right of way granted by the easement. Peters refused to accept the easement after he learned of its existence.

An easement may be created by grant, by prescription or by agreement or contract. (*D.M. Goodwillie Co. v. Commonwealth Electric Co.* (1909), 241 Ill. 42, 72, 89 N.E. 272; *Harris Trust & Savings Bank v. Chicago Title & Trust Co.* (1980), 84 Ill. App. 3d 280, 283, 405 N.E.2d 411, 414.) Such agreements, however, must be construed to carry out the plain intent of the parties. (*Barber v. Allen* (1904), 212 Ill. 125, 131, 72 N.E. 33; *Chicago Title & Trust Co. v. Wabash-Randolph Corp.* (1943), 384 Ill. 78, 85, 51 N.E.2d 132; *The Fair v. Evergreen Park Shopping Plaza of Delaware, Inc.* (1954), 4 Ill. App. 2d 454, 466, 124 N.E.2d 649.) Where an easement is created by express terms, the parties' rights must be ascertained from the language of the grant. Also, surrounding circumstances may be considered in order to determine the intent of the parties when they made the grant. (See *Louisville & Nashville R.R. Co. v. Koelle* (1882), 104 Ill. 455, 460; *Chicago Title & Trust*, 384 Ill. at 84-85.) "The law must give a common sense construction to grants, and consider the state of things, and the considerations in view of the parties at the time the grant is made, which moves them to its execution and acceptance." *Hadden v. Shoutz* (1854), 15 Ill. 581, 582.

The Rosenbooms drafted and recorded the purported easement without Peters' knowledge or consent. It is hornbook law that a contract or agreement is a consensual undertaking. To be valid, it re-

quires consideration, an offer and an acceptance. We hold that neither the District's commissioners nor the circuit court can force Peters to accept the maintenance obligations of the Rosenboom easement.

Here, the trial court found the District had "provided plaintiff with access to the small landlocked acreage lying north of the ditch." The court said that maintenance of the bridge could be expensive for the District and would also present an "unmentioned potential to small drainage districts for liability for injury to person or property." The trial court further stated:

"[T]he District has a right to provide alternative access to the landlocked area and, as a matter of fiscal prudence, have [sic] an obligation to do so. Furthermore, the bridge was built for far different equipment than is now generally used in farming operations, and the District has no obligation to enlarge the bridge to accommodate these changes. This Court chooses to confirm the sensible alternative provided."

■■ The trial court cited no authority, and we find none, for its conclusion that the District can evade its statutory obligation to maintain the bridge due to financial expense. The District is empowered to levy assessments for repairs, including emergency repairs. (Ill. Rev. Stat. 1991, ch. 42, pars. 4−18(a), (e).) Furthermore, we do not agree with the trial court's holding that the District can avoid its duty to maintain the bridge as a result of the Rosenboom easement. We have clearly noted that the Rosenboom easement was not executed until after Peters filed this litigation. Also, we have found that the Rosenboom easement and its maintenance obligations were never accepted by Peters.

There is no dispute that the following statute controls our determination concerning the bridge. The record shows that the District was organized prior to June 28, 1919, and the bridge at issue was constructed prior to January 1, 1956. The controlling statute reads in pertinent part:

"In districts organized prior to June 28, 1919, under the Farm Drainage Act, the districts shall continue to be liable for the construction, reconstruction and maintenance of at least one bridge or proper passageway over each open ditch constructed or ordered constructed prior to the effective date of this Act [effective January 1, 1956] where the same crosses any enclosed tract or parcel of land in such a manner that a portion thereof is landlocked and has no access from any public highway other than by a bridge or passageway over the ditch. The cost of constructing, reconstructing and maintaining such

bridge or crossing shall be paid by the district, *except* that the commissioners may contract with the owner of any land crossed by the ditch for such owner to construct, reconstruct and maintain any such bridge or crossing, or they may enter into any other agreement with such owner by which the district may be relieved of or released from such liability." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 42, par. 12—5.

The record clearly shows that there has been *no* agreement between Peters and the District which would release the District from its legal duty to maintain the bridge. Accordingly, we hold that pursuant to the statute in question, the District is legally liable to maintain the bridge in a safe condition so that Peters can use the bridge for access to the landlocked portion of his farm.

For the reasons indicated, the judgment of the circuit court of Iroquois County is reversed in part and affirmed in part. Finally, judgment is entered against the District and in favor of Peters in the amount of $4,125.

Affirmed in part; reversed in part.

STOUDER and BRESLIN, JJ., concur.