JUSTICE STEIGMANN, dissenting: I respectfully dissent. The easement in this case should not be restricted to its “actual use,” as that phrase is defined by the Trusts. However, even if the easement were restricted to its actual use, the State, as the servient landowner, gave Verizon its “consent” to relocate the easement. The Trusts argue that the trial court improperly granted Verizon’s motion for summary judgment because Verizon was not entitled to maintain its cables on the 6.883-acre tract based on the express easement the Trusts’ predecessors in interest granted GTE in 1965. Specifically, the Trusts contend that (1) while the 1965 easement was a “floating” easement — that is, an easement granting GTE authority to install telecommunication cables on any part of section 26 — once GTE installed the cables, its easement should have been limited by GTE’s — and later Verizon’s — “actual use” and, having no authority to relocate the cables GTE had installed, (2) the utility permit and agreement with the State did not amount to sufficient consent to allow Verizon to relocate its original easement. I disagree. A. The Trusts’ Claim That Verizon’s Easement Should Have Been Limited to Its Actual Use In support of its argument that the easement should have been limited to its actual use, the Trusts rely on Vallas, 72 Ill. App. 3d 281, 390 N.E.2d 939, and Peters, 243 Ill. App. 3d 14, 610 N.E.2d 1385. In Vallas, the easement at issue lacked a defined width. Vallas, 72 Ill. App. 3d at 282, 390 N.E.2d at 941. The court concluded that the width of the easement should be confined to the dimensions that were reasonably necessary to achieve the purpose for which the easement was created, as established by its actual use. Vallas, 72 Ill. App. 3d at 284, 390 N.E.2d at 942. Similarly, in Peters, the language granting the easement at issue was not available to the parties or the court. Peters, 243 Ill. App. 3d at 18, 610 N.E.2d at 1388. As a result, the court followed the rationale in Valias, concluding that the easement’s width — which was the subject of controversy — should be restricted to the extent of its actual use. Peters, 243 Ill. App. 3d at 18-19, 610 N.E.2d at 1388-89. Unlike Vallas and Peters, however, the easement in this case was definite. “Actual use” is only an issue when the parameters of an easement are in question because those parameters put the parties and subsequent purchasers on notice of its existence, size, and location (see Peters, 243 Ill. App. 3d at 18-19, 610 N.E.2d at 1389 (“where an easement granted by deed is undefined as to its location and width, the dimensions depend upon the intent of the parties, which can be shown by the extent of the actual use” (emphasis added))). The original 1965 easement in this case — which was recorded — specifically delineated that it encompassed all of section 26. Thus, subsequent bona fide purchasers would have been on notice that Verizon’s cables could have been buried on any part of section 26. The fact that the Trusts and the Perbix family had some general knowledge of the cables’ original location is of no moment, as they should be treated as any other bona fide purchaser. B. The Trusts’ Claim That the Utility Permit Was Insufficient To Demonstrate Its Intent To Allow Verizon To Relocate Its Easement The Trusts further contend that, having no authority to relocate the cables GTE had installed, the utility permit was insufficient to demonstrate the State’s intent to allow Verizon to relocate its easement. The majority agrees with the Trusts, citing the following excerpt from Peters: “ ‘[W]here an easement granted by deed is undefined as to its location and width, the dimensions depend upon the intent of the parties, which can be shown by the extent of the actual use. Consequently, ‘ “[w]hen the character of [the] easement is once fixed, no material alterations can be made by either the servient or easement owner without the other’s consent.’ ” ’ [Citation.]” (Emphasis added.) 396 Ill. App. 3d at 657. Accordingly, consent was the only requirement necessary to effectuate the reallocation of the cables. To be clear, the law requires “consent” to relocate, not the granting of a new easement. Here, the State, through IDOT — the then-servient landowner — gave such consent. The utility permit — like the documents in this record that show that the cables were moved with the financial assistance of the State — was merely evidence of such consent. In support of its conclusion that Verizon was not granted permission to move its easement, the majority notes that “although GTE tried to acquire an easement from the Perbix family to relocate its lines, it never sought an easement from the State. It requested and received only a permit.” 396 Ill. App. 3d at 658. Of course it did. GTE never sought an easement from the State because it already had one. It was merely seeking consent to relocate its lines within an easement it already had on land owned by the State. The majority also points to the language of (1) the utility permit and (2) section 530.40(b) of Title 92 of the Administrative Code to demonstrate that the permit should not be construed to grant the permit’s holder an easement or any other property interest for that matter. This language would be significant if the State had granted Verizon an interest in land. However, as previously stated, it did not. Instead, the State granted Verizon — in part, by way of permit — consent to relocate a property interest it already had in land owned by the State.