No. 3--05--0102

Filed July 11, 2006.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| INTERIOR CRAFTS, INC. | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit |
| Plaintiff, | ) | Will County, Illinois |
| | ) | |
| and AMERICAN INSURANCE CO. | ) | |
| as assignee/subrogee of | ) | |
| INTERIOR CRAFTS, INC. | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 01--MR--187 |
| | ) | |
| TODD LEPARSKI, a/k/a Todd | ) | |
| Joseph Leparski, MARLENE | ) | |
| LEPARSKI, and MARQUETTE | ) | |
| NATIONAL BANK. | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PAN AMERICAN BANK, | ) | Honorable |
| | ) | Amy M. Bertani-Tomczak, |
| Defendant-Appellant., | ) | Judge, presiding |

JUSTICE HOLDRIDGE delivered the opinion of the court:

Interior Crafts, Inc. (Interior), hired Todd Leparski to be an assistant comptroller. Due to extremely lax accounting procedures at Interior, Leparski was allowed to both receive and deposit incoming checks from Interior's customers. Consequently, Leparski managed to steal approximately one-half million dollars from Interior during his

employment from October 2000 to February 2001. Leparski accomplished his theft by taking several checks from the incoming mail which were made payable to Interior by customers. He would then endorse the checks - "Interior Crafts - For Deposit Only" - and place the checks into deposit envelopes. He then placed those envelopes into an automatic teller machine (ATM) owned by Pan American Bank, with instructions to deposit the checks into a bank account which he maintained in his own name at Marquette Bank. Following the instructions on the deposit slip, Pan American deposited funds to Leparski's account at Marquette Bank. Eventually, Marquette Bank alerted Interior to the fact that Leparski was depositing checks into his personal account which were payable to Interior. After Leparski's actions were discovered, Interior was able to recover in cash from Leparski approximately half of the money he had stolen. In addition, Interior had an insurance policy with American Insurance Company which included commercial crime coverage. American paid Interior $250,000 pursuant to that insurance policy. Interior then sued Leparski and both Pan American Bank and Marquette Bank for conversion seeking recovery of the money not recovered from Leparski. American Insurance joined in the suit as Interior's assignee and subrogee. The trial court granted summary judgment as to both liability for conversion and damages in favor of American Insurance against Pan American Bank. Pan American appeals to this court from the trial court's grant of summary judgment against it.

The only issue on appeal is whether summary judgment was properly entered against Pan American Bank as to liability for conversion and damages.

Interior alleged that Pan American was liable for damages in conversion. Interior's claim is based upon the theory that Pan American was obligated under the

2

restrictive endorsement - "Interior Crafts - For Deposit Only" - to deposit the funds only in an Interior Crafts account. Interior maintains that Pan American's depositing the funds in Leparski's account constituted a conversion, for which Pan American was liable to Interior for damages.

The ATM into which Leparski placed the stolen checks was owned and serviced by Pan American. A bank that owns an ATM does not have any information that tells it the name of the owner of an account in another bank into which a check placed in the ATM is to be deposited. The bank that owns the ATM has access only to the check itself and the card number of the person who placed the check into the machine. Accordingly, the bank which owns an ATM has no way of knowing whether the name on the account at the depository bank matches the name of the payee on the check. In the instant case, the Marquette Bank deposit slips that Leparski used when he put the stolen checks into the ATM, did not state the name of the owner of the account.

Pan American employees removed the checks from the ATM and inspected the checks for the presence of an endorsement. Pan American maintained that, because the checks were not deposited into an account at Pan American Bank, its employees had no means to verify the authenticity of the endorsements on the checks, nor could they verify that the payee name matched the name on the account into which the checks were being deposited. The checks were physically transported to a Pan American Bank facility where Pan American wire transferred the amount of each check to Marquette Bank for deposit into Leparski's account at Marquette Bank, in accordance with the instructions on the deposit slip. Pan American then endorsed the checks and sent them through a series of collecting banks back to the various drawee banks on

3

which the drawers, the customers of Interior Banks, had drawn the checks. Consistent with automated banking procedures, the actual checks were never physically in the possession of Marquette Bank. Plaintiffs moved for summary judgment against Pan American Bank asserting conversion under Uniform Commercial Code (UCC) section 3-206(c)(2), which imposes conversion liability on a depository bank for failure to honor a restrictive endorsement. Specifically:

"If an instrument bears an indorsement * * * in blank or to a particular bank using the words "for deposit," "for collection," or other words indicating a purpose of having the instrument collected by a bank for the indorser or for a particular account, the following rules apply: * * *

A depository bank that purchases the instrument or takes it for collection when so indorsed converts the instrument unless the amount paid by the bank with respect to the instrument is received by the indorser or applied consistently with the indorsement." 810 ILCS 5/3-206(c)(2)(West 2000).

The trial court granted summary judgment, finding: (1) that Pan American Bank was a "depository bank" subject to section 3-206 of the Code; and (2) that Pan American Bank, as a depository bank was strictly liable to the payee of the checks. Pan American Bank now appeals.

This is an appeal from an order granting summary judgment. Therefore, the standard of review is de novo, meaning no deference is given to the judgment below.

Gullen v. Potomac Insurance Co., 203 Ill. 2d 141 (2003). Under de novo review, the court considers the facts and law related to the case to determine whether the trial court was correct in its conclusion that there was no genuine issue of material fact and the movant was entitled to judgment as a matter of law. Bank One, Springfield v. Roscetti, 309 Ill. App. 3d 1048 (1999). Summary judgment is a drastic remedy to be granted only where the movant's right to it is so clear as to be free from doubt. Groshek v. Frainey, 274 Ill. App. 3d 566, 569 (1995).

The key issue in this matter is whether the trial court was correct in determining that Pan American Bank is a "depository bank" within the meaning of section 3-206 of the UCC. Pan American Bank maintains that it is not a "depository bank" and thus is not liable for conversion under section 3-206.

A discussion of what is a "depository bank" must begin with a definition. The UCC as codified in Illinois contains a definition of "depository bank." Under the Illinois Code, a "depository bank" is "the first bank to take an item even though it is also the payor bank, unless the item is presented for immediate payment over the counter. 810 ILCS 5/4-105(2)(West 2000).

Thus, if we follow the Illinois Code definition of "depository bank" Pan American Bank clearly is a "depository bank." It was the first bank to take the checks when the checks were deposited in the ATM. Section 3-206 imposes conversion liability on the depository bank for failure to honor a restrictive endorsement. Pan American Bank maintains, however, that the statutory definition of "depository bank" is erroneous in that the definition of "depository bank" as been preempted by a federal regulatory definition.

5

Pan American notes that under federal bank regulations at 12 C.F.R section 229.2(o):

> "Depository bank means the first bank to which a check is transferred even though it is also the paying bank or the payee. A check deposited in an account is deemed to be transferred to the bank holding the account into which the check is deposited, even though the check is physically received and indorsed first by another bank." 12 C.F.R. section 229.2 (2006).

Under this definition, in the instant matter, Marquette Bank, not Pan American Bank, was the depository bank. Leparski used Pan American's ATM machine to deposit the checks into his account at Marquette Bank. Thus, under the federal regulation, Marquette Bank, not Pan American would have been solely liable for conversion as a "depository bank."

We are faced with two conflicting definitions of "depository bank" and the definition which applies will determine the outcome. Pan American argues that the federal code has preempted the statutory definition. We disagree.

Pan American cites no authority for the proposition that the UCC definition of "depository bank" has been pre-empted by the federal regulatory definition. We note that while the federal regulatory definition dates back to at least 1988 (see 53 FR 31290-01) Illinois courts have continued to rely upon the UCC definition. See, <u>Continental Casualty Co., Inc. v. American</u>

6

<u>National Bank and Trust Co. of Chicago</u>, 329 Ill. App. 3d 686 (2002).  Preemption cannot occur by accident, but only by the manifest intent of the federal government acting within its jurisdiction.  <u>Fifth Third Bank ex rel. Trust Officers v. CSX Corp.</u>, 415 F.3d 741 (7th Cir. 2005).

Moreover, in reading the federal regulatory scheme in its entirety, it is clear that the definition of "depository bank" contained in the cited federal regulations, was intended to be limited in scope and was not intended to preempt the UCC law of negotiable instruments. We therefore find that the trial court was correct as a matter of law in finding that Pan-American Bank was a depository bank.

Pan-American next maintains that the trial court erred in determining that it strictly liable for failure to honor the restrictive endorsement "Interior Crafts - For Deposit Only."  We disagree.

Article 3 of the UCC imposes certain duties and responsibilities on the depository bank.  With respect to restrictive endorsements, the depository bank is liable in conversion for failing to honor a restrictive endorsement. Section 3-206(c)(2) of the Code provides:

> "If an instrument bears an indorsement * * *
> in blank or to a particular bank using the
> words "for deposit," "for collection," or
> other words indicating a purpose of having
> the instrument collected by a bank for the

7

indorser or for a particular account, the
following rules apply: * * *

A depository bank that purchases the
instrument or takes it for collection when so
indorsed converts the instrument unless the
amount paid by the bank with respect to the
instrument is received by the indorser or
applied consistently with the indorsement."

810 ILCS 5/3-206(c)(2)(West 2000).

Under section 3-206 a depository bank is liable in conversion
unless the payee under a restrictive endorsement receives the
amount of the check or unless the amount of the check is
deposited in the endorser's account. It is undisputed that
neither occurred in the instant matter.

However, Pan-American maintains that it can escape liability
for conversion because Leparski, not Interior Designs was the
restrictive endorser. We disagree. The Code provides for
liability if payment is made inconsistent with the restrictive
endorsement. There is no requirement that the restrictive
endorsement be made only by an by authorized agent. Pan-American
suggests that Western Assurance Co., Inc. v. Star Financial Bank
of Indianapolis, 3 F.3d 1129 (7th Cir. 1993), provides support for
its proposition. However, Western Assurance is distinguishable
in one salient detail: Western Assurance dealt with the question
of apparent authority to negotiate checks, not whether the

8

depository bank was liable for failure to honor a restrictive endorsement.  <u>Western Assurance</u>, 3 F.3d at 1131-32.

Pan-American lastly maintains that the trial court erred in not allowing it to assert certain affirmative defenses. Specifically, Pan-American maintains that it should be able to asset Interior Crafts' alleged comparative negligence available to a depository bank against strict liability for conversion for paying an instrument over a forged endorsement.  810 ILCS 5/3-405 and 3-406 (West 2000).  We disagree.  The affirmative defense of comparative negligence is available where the indorsement is forged, not, as in the instant matter, where the depository bank simply fails to honor the restrictive endorsement.

For the foregoing reasons, we find that the trial court did not err in granting summary judgment.  The judgment of the circuit court of Will County is affirmed.

Affirmed.

LYTTON and BARRY, JJ., concur.