Filed 12/8/09          NO. 4-08-0393

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| GEORGE H. PERBIX, JR., Trustee of the | ) | Appeal from |
| GEORGE H. PERBIX, JR., TRUST, Dated | ) | Circuit Court of |
| March 22, 1991; JOHN C CHABUT, | ) | Morgan County |
| Trustee of the JO ELLEN PERBIX KUZILA | ) | No. 05L2 |
| TRUST, Dated November 30, 1998; and | ) | |
| JILL PERBIX CHABUT, Trustee of the | ) | |
| JILL PERBIX CHABUT TRUST, Dated | ) | |
| December 24, 1991, | ) | |
|      Plaintiffs-Appellants, | ) | |
|        v. | ) | Honorable |
| VERIZON NORTH, INC., a Corporation, | ) | Richard T. Mitchell, |
|      Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE POPE delivered the opinion of the court:

In January 2005, plaintiffs, George H. Perbix, Jr., trustee of the George H. Perbix, Jr., trust, dated March 22, 1991; John C. Chabut, trustee of the Jo Ellen Perbix Kuzila trust, dated November 30, 1998; and Jill Perbix Chabut, trustee of the Jill Perbix Chabut trust, dated December 24, 1991, filed a two-count complaint seeking (1) declaratory relief, which would require defendant, Verizon North, Inc. (Verizon), to remove its telecommunications cables from a 6.883-acre parcel owned by these three trusts and (2) a finding that Verizon's failure to remove its cables constituted trespass. Hereinafter, for ease, we refer to the plaintiff trusts as "the Trusts" and the individuals who established the Trusts and their predecessors in interest, who owned the land prior to its placement in these trusts, as "the Perbix family."

In March 2005, Verizon filed its answer, (1) denying

the Trusts were entitled to declaratory relief, (2) asserting affirmative defenses, and (3) counterclaiming for (a) declaratory relief and (b) an injunction. In April 2007 and July 2007, Verizon and the Trusts filed respective motions for summary judgment. In May 2008, the trial court granted Verizon's motion for summary judgment, finding Verizon possessed an express easement over the contested 6.883-acre parcel.

The Trusts appeal, arguing the trial court erred by granting Verizon's motion for summary judgment and denying the Trusts' motion for summary judgment. According to the Trusts, Verizon was not entitled to keep its utility lines on the 6.883-acre parcel of property, which were installed in that particular location pursuant to a revocable license created by an Illinois Department of Transportation (IDOT) utility permit. We reverse and remand with directions.

## I. BACKGROUND

Because (1) the parties are familiar with the location of the real property in this case and (2) the precise location and grid coordinates are not fundamental to the issues presented, we have omitted precise locations and coordinates.

In October 1965, the Perbix family granted General Telephone Company of Illinois (GTE)--which would later become Verizon--an express easement over a parcel of land it owned that (1) abutted old United States Highway 36 on the north and south and (2) was commonly known as section 26. The easement authorized GTE "to construct, operate, patrol and maintain its commu-

nication lines[,] including necessary underground cables, wires, conduits, splicing boxes, surface terminals, markers, and appurtenances upon, over and across" section 26. The next year, GTE installed underground cables, which ran parallel and immediately adjacent to old U.S. Highway 36 on the north side of the highway.

In January 1976, the Perbix family conveyed a 31.53-acre parcel of section 26 south of old U.S. Highway 36 to IDOT. IDOT later constructed a highway interchange on this parcel. (GTE's underground cables remained in their original location just north of old U.S. Highway 36.)

In June 1981, the Perbix family granted GTE a "right of way easement" to construct, operate, patrol, and maintain its communication lines directly north of the cables it had buried pursuant to the original 1965 easement. GTE later installed additional cables north of its other lines pursuant to this easement. (At this point, GTE had two sets of cables running north of and parallel to old U.S. Highway 36.)

In June 1995, the Perbix family conveyed an additional 9.109-acre parcel immediately north of old U.S. Highway 36 to IDOT. Both of the sets of cables GTE installed pursuant to the 1965 and 1981 easements crossed this 9.109-acre parcel of property. IDOT thereafter planned a redesign of the interchange to construct an additional ramp. As a result, IDOT determined that GTE's cables needed to be relocated to the south side of old U.S. Highway 36. Sometime between June 1995 and the completion of IDOT's redesign in 1996, GTE requested a new easement from the

Perbix family, instead of an easement or license from the state, to install its cables south of old U.S. Highway 36 on the west side of the remaining property the Perbix family still owned. The Perbix family declined.

According to an uncontradicted affidavit from George H. Perbix, which was attached to the Trusts' memorandum in support of their motion for summary judgment, he became aware sometime prior to June 10, 1996, the State might not continue to use a portion of the 31.53-acre parcel of land the Perbix family sold to the State in January 1976. On June 10, 1996, an attorney for Perbix wrote to IDOT expressing an interest in purchasing any of the surplus property. On June 12, 1996, IDOT responded:

> "Presently within the development of the U.S. 67 extension, or Jacksonville Bypass to which it is commonly referred, there is not excess land. A new interchange is to be constructed at the above reference location. The existing ramp which is currently servicing traffic in the southeast quadrant of the proposed interchange will be redesigned during construction.
>
> There is the possibility that there may be some excess land at this location created with the redesign of this interchange. It will not be known for certain until the construction project is completed, and there is

- 4 -

no longer a transportation necessity for all properties. Should any potential excess land be designated after completion of construction, we will notify your office of such a situation and proceed with the process of disposal of excess land."

In August 1996, following the Perbix family's denial of GTE's request for an easement, GTE submitted a request to IDOT for a utility permit for the relocation of its cables south of old Highway 36 onto the land IDOT purchased from the Perbix family in 1976. Contrary to its actions with respect to its request of the Perbix family, GTE did not ask the State to grant it an easement. In September 1996, IDOT approved GTE's request and granted utility permit No. 6-25303. That same month, IDOT and GTE entered into an agreement for a reimbursable utility adjustment in which IDOT agreed to pay 39.7% of the costs associated with relocating the underground cables. In 1997, GTE installed its cables on (1) IDOT's parcel and, at that time, (2) current state right of way that ran on the eastern edge of the land south of old Highway 36 that the Perbix family sold to the State in 1976.

The redesign of the interchange resulted in unneeded excess land, i.e., the 6.883 acres. In June 1999, IDOT informed George H. Perbix of the excess property. IDOT stated it would prepare an excess land plat and obtain an appraisal of this parcel. According to George H. Perbix's uncontradicted affida-

vit, prior to IDOT obtaining the appraisal of the 6.883-acre parcel, IDOT removed the original exit ramp from the southeast quadrant of the interchange, filled the ditch that was parallel to the ramp, and created a surface on the 6.883-acre tract with contours similar to those in existence in 1976.

In November 2001, IDOT informed George H. Perbix it had received and reviewed the appraisal for the 6.883-acre parcel. IDOT told George H. Perbix to remit a $3,000 cashier's check to IDOT for the property so that IDOT could request the directed sale of the 6.883-acre parcel of property to George H. Perbix be included in the annual highway bill submitted to the Illinois General Assembly during the 2002 spring legislative session. IDOT was authorized to sell the parcel to the Trusts in August 2002 pursuant to Public Act 92-0843.

In September 2002, the State of Illinois, acting through IDOT, executed a quitclaim deed conveying the property at issue in this case to the Trusts. (GTE's underground cables, which it had moved in 1997, ran, in part, along the eastern border of this 6.883-acre parcel.) The quitclaim deed did not reserve a license or easement for Verizon to keep and/or maintain its utility lines on the 6.883-acre parcel. According to the uncontradicted affidavit of George H. Perbix, no one from IDOT informed him or anyone else acting on behalf of the Trusts of the issuance of utility permit No. 6-25303, dated September 24, 1996, or revised utility permit No. 6-25303, dated October 30, 1996, or of the existence of the underground cables on the 6.883-acre

parcel.

In the spring of 2003, the Trusts began excavation work on the 6.883-acre parcel acquired from IDOT in 2002. Preparation for this excavation work revealed the underground cables that GTE--which was then Verizon--had installed on the eastern border of that parcel pursuant to its September 1996 agreement with IDOT.

In June 2003, George H. Perbix wrote to IDOT, inquiring about permits or agreements between IDOT and GTE regarding the cables running across the 6.883-acre parcel. In September 2003, George H. Perbix requested a copy of associated utility agreement No. U-6-97-009. In October 2003, IDOT provided copies of utility agreement No. U-6-97-009 and utility permit No. 6-25303. In November 2003, George H. Perbix wrote to IDOT requesting further information about the utility permit and utility agreement. In December 2003, IDOT responded to George H. Perbix, indicating IDOT was unable to find documents or notes of conversations about the utility permit and agreements relative to the sale of the 6.883-acre parcel of property.

In January 2004, George H. Perbix wrote to Verizon, informing Verizon that it must remove the cables on the 6.883-acre parcel because Verizon did not have an easement over that tract. In August 2004, Verizon responded it was not legally obligated to move the cables. In November 2004, the Trusts sent Verizon a notice, purporting to terminate its "license" under utility permit No. 6-25303, which IDOT had previously granted to

GTE, Verizon's predecessor in interest. In December 2004, Verizon responded it had the right to occupy the property pursuant to the utility permit, as well as the easements previously granted to GTE by the Perbix family. Verizon stated in the letter the costs to relocate its facilities would be approximately $40,000.

In January 2005, the Trusts filed a two-count complaint against Verizon, seeking (1) declaratory relief, which would require Verizon to remove its telecommunications cables from the 6.883-acre parcel owned by the Trusts and (2) a finding Verizon's failure to remove its cables constituted trespass. In March 2005, Verizon filed its answer, (1) denying the Trusts were entitled to declaratory relief, (2) asserting affirmative defenses, and (3) counterclaiming for (a) declaratory relief and (b) an injunction.

In April 2007 and July 2007, Verizon and the Trusts filed respective motions for summary judgment. In May 2008, the trial court (1) granted Verizon's motion for summary judgment, finding that, as a matter of law, (a) the cables were originally placed on the eastern border of the 6.883-acre parcel with the consent of IDOT, the then fee-owner of the parcel, and (b) that consent, together with the October 1965 express easement over all of section 26 from the Perbix family, authorized Verizon to place its cables south of Highway 36--which included the eastern border of the 6.883-acre parcel--and (2) denied the Trusts' motion for summary judgment.

This appeal followed.

## II. ANALYSIS

The Trusts argue the trial court erred (1) in granting Verizon's motion for summary judgment, finding Verizon was entitled to maintain its telecommunication cables in their current location pursuant to the 1965 easement and the utility permit, and (2) in denying the Trusts' motion for summary judgment because Verizon's lines were installed pursuant to a license, subject to revocation by the Trusts.

"With a summary-judgment motion, the trial court does not decide a question of fact but, rather, determines whether one exists." Coole v. Central Area Recycling, 384 Ill. App. 3d 390, 396, 893 N.E.2d 303, 309 (2008). Therefore, a court may not weigh evidence or make credibility determinations when deciding a summary-judgment motion. Coole, 384 Ill. App. 3d at 396, 893 N.E.2d at 309.

We review de novo rulings on motions for summary judgment, (1) examining the pleadings and depositions anew to determine whether a question of material fact exists and as a matter of law, that the movant was entitled to judgment, and (2) giving no deference to the trial court's ruling. Interior Crafts, Inc. v. Leparski, 366 Ill. App. 3d 1148, 1151, 853 N.E.2d 1244, 1247 (2006). "[W]e may affirm a trial court's grant of summary judgment on any basis appearing in the record." State Automobile Mutual Insurance Co. v. Habitat Construction Co., 377 Ill. App. 3d 281, 291, 875 N.E.2d 1159, 1168 (2007).

- 9 -

Both the Trusts and Verizon agree the 1965 easement the Perbix family granted to GTE was a "floating easement." A floating easement is "[a]n easement that, when created, is not limited to any specific part of the servient estate." Black's Law Dictionary 528 (7th ed. 1999).

>"[W]here an easement granted by deed is undefined as to its location and width, the dimensions depend upon the intent of the parties, which can be shown by the extent of the actual use. Consequently, '"[w]hen the character of [the] easement is once fixed, no material alterations can be made by either the servient or easement owner without the other's consent."'" Peters v. Milks Grove Special Drainage Dist. No. 1, 243 Ill. App. 3d 14, 18-19, 610 N.E.2d 1385, 1389 (1993), quoting Vallas v. Johnson, 72 Ill. App. 3d 281, 284, 390 N.E.2d 939, 942 (1979), quoting 25 Am. Jur. Easements §87 (1966).

In its brief before this court, Verizon "acknowledge[d] that the placement of its cables in 1966 established the initial parameters of the 1965 easement."

According to Verizon's brief, after the parameters of the 1965 easement were established, "Verizon could not unilaterally relocate the easement; the consent of the servient estate owner was a prerequisite to relocation." However, Verizon con-

tends it had the consent of the State, the servient estate owner, in 1997 to move its cables to their current location on the 6.883-acre parcel of land in question. The Trusts argue the State did not consent to the relocation of the easement itself. According to the Trusts, the State only gave Verizon a license to place its cables on the 6.883 acres.

We agree with the Trusts. The State did not consent to the relocation of the easement. The State merely granted GTE permission pursuant to a utility permit to relocate the cables, not the easement, to their current location on the subject property. As a result, the location of the easement was not moved; nor was a new easement created.

When the State determined GTE's lines had to be moved to accommodate additional highway construction, GTE could not acquire an easement on the ground the Perbix family still owned immediately east of the 6.883 acres in question in this case. As a result, it sought a utility permit for the relocation of its telephone cables adjacent to old U.S. Highway 36 to be placed on the right-of-way of the state highway known as FAP310. This location was to the immediate west of the Perbix family's real estate over which GTE had requested, unsuccessfully, to move its easement. As we noted earlier, although GTE tried to acquire an easement from the Perbix family to relocate its lines, it never sought an easement from the State. It requested and received only a permit.

Pursuant to a revised utility permit granted by IDOT in

- 11 -

October 1996, GTE installed, in 1997, copper and fiber-optic cables on property owned by the State of Illinois. The revised utility permit, on its face, was subject to the conditions and restrictions of section 530 of Title 92 of the Illinois Administrative Code (Administrative Code) (92 Ill. Adm. Code §530, as amended by 16 Ill. Reg. 2193 (eff. January 27, 1992)), and the implementing regulations for section 9-113 of the Illinois Highway Code (Highway Code) (605 ILCS 5/9-113 (West 1996)). Section 9-113(d) of the Highway Code provides:

> "In no case shall the written consent of the
> State highway authority give or be construed
> to give any entity any easement, leasehold[,]
> or other property interest of any kind in,
> upon, under, above[,] or along the non[]toll
> federal-aid fully access-controlled State
> highway right-of-way."  605 ILCS 5/9-113(d)
> (West 1996).

Thus, GTE was on notice it was only getting a permit and not an easement.

Section 530.40(b) of Title 92 of the Administrative Code provides, "A permit from the Department grants a license only *** and does not create a property right ***."  92 Ill. Adm. Code §530.40(b), as amended by 16 Ill. Reg. 2212 (eff. January 27, 1992).  Further, subsection (h) provides:

> "In no case shall the permit give or be
> construed to give an entity any easement,

leasehold or other property interest of any kind in, upon, under, above[,] or along the State highway right-of-way."  92 Ill. Adm. Code §530.40(h), as amended by 16 Ill. Reg. 2213 (eff. January 27, 1992).

Thus, by express statutory and Administrative Code language, the granting of a permit, which IDOT did in this case, cannot constitute the granting of an easement.  Thus when the Trusts acquired the 6.883-acre tract, GTE's lines were placed there pursuant to a permit.  Thus Verizon held only a permitted-use license.

"A license in respect to real property is permission to do an act upon the land of another without possessing any estate or interest in such land. [Citation.]  A parol license is revocable, although a consideration has been paid or expenditures have been made on the faith of the agreement, except when revocation would operate as a fraud upon the licensee."  Wilder v. Finnegan, 267 Ill. App. 3d 422, 427, 642 N.E.2d 496, 501 (1994).

Verizon has made no allegations of fraud in this case.

While the State could have, when transferring the property to the Trusts, reserved an easement for the benefit of Verizon (see Champaign National Bank v. Illinois Power Co., 125 Ill. App. 3d 424, 431, 465 N.E.2d 1016, 1021 (1984) ("The weight

- 13 -

of modern authority supports the position that commercial easements in gross are alienable, especially when the easements are for utility purposes")), it did not do so.  Consequently, Verizon only held a license permitting its use of the 6.883 acres.

Because Verizon only had a license to run its lines on the 6.883-acre parcel, the license could be revoked, unlike an easement.  See Keck v. Scharf, 80 Ill. App. 3d 832, 835, 400 N.E.2d 503, 505 (1980).  In addition, "[a] license ordinarily is revoked by a sale, conveyance, or lease of the land, without a reservation to the licensee."  25 Ill. L. & Prac. Licenses §59, at 106 (2001).  If the license was not automatically revoked by the sale of the parcel from the State to the Trusts, the license was subject to revocation by the Trusts, the subsequent purchasers.

Verizon also argues both (1) it possesses an implied easement arising from a preexisting use and (2) it should be allowed to continue to use the subject parcel as a matter of public policy.  We disagree with Verizon on both points.

We first address Verizon's implied-easement contention. According to our supreme court:

> "The easement implied from a prior ex-
> isting use, often characterized as a 'quasi-
> easement,' arises when an owner of an entire
> tract of land or of two or more adjoining
> parcels, after employing a part thereof so
> that one part of the tract or one parcel de-

- 14 -

rives from another a benefit or advantage of an apparent, continuous, and permanent nature, conveys or transfers part of the property without mention being made of these incidental uses.  In the absence of an expressed agreement to the contrary, the conveyance or transfer imparts a grant of property with all the benefits and burdens which existed at the time of the conveyance of the transfer, even though such grant is not reserved or specified in the deed. [Citations.] This court has stated on numerous occasions that an easement implied from a preexisting use is established by proof of three elements: first, common ownership of the claimed dominant and servient parcels and a subsequent conveyance or transfer separating that ownership; second, before the conveyance or transfer severing the unity of title, the common owner used part of the united parcel for the benefit of another part, and this use was apparent and obvious, continuous, and permanent; and third, the claimed easement is necessary and beneficial to the enjoyment of the parcel conveyed or retained by the grantor or transferrer."  Granite Properties

*Ltd. Partnership v. Manns*, 117 Ill. 2d 425, 436-37, 512 N.E.2d 1230, 1236 (1987). The facts in this case do not meet the requirements for an implied easement. As for the first element, a dominant estate did not exist. As for the second element, the common owner, i.e., the State, was not using the parcel that was sold to benefit the property it retained, at least with regard to Verizon's lines. Finally, as for the third element, while the lines are important to Verizon, the lines are not necessary and beneficial to the enjoyment of either the parcel of land conveyed or the land kept by the State.

As for Verizon's public-policy argument, Verizon incorrectly cited section 9-127 of the Highway Code from the 2006 edition of the State Bar Association edition of the Illinois Compiled Statutes (605 ILCS 5/9-127 (West 2006)). Between the time the subject property was sold by the State to the Trusts in September 2002 and the publication of the 2006 State Bar edition of the Illinois Compiled Statutes, the language of section 9-127 was amended on two separate occasions. Pub. Act 93-321, §5, eff. July 23, 2003 (2003 Ill. Legis. Serv. 2056, 2056-57 (West)); Pub. Act 94-476, §5, eff. August 4, 2005 (2005 Ill. Legis. Serv. 2545 (West)). However, the amendment of section 9-127 does impact our result.

When the State sold the subject property to the Trusts, section 9-127(a) of the Highway Code stated in part:

"Except as provided in subsection (b)

and in cases where the deed, or other instru-
ment, dedicating a highway or part thereof,
has expressly provided for a specific devolu-
tion of the title thereto upon the abandon-
ment or vacation thereof, whenever any high-
way or any part thereof is vacated under or
by virtue of any Act of this State or by the
highway authority authorized to vacate the
highway, the title to the land included with-
in the highway or part thereof so vacated,
vests in the then owners of the land abutting
thereon, in the same proportions and to the
same extent, as though the highway had been
dedicated by a common law plat (as distin-
guished from a statutory plat) and as though
the fee of the highway had been acquired by
the owners as a part of the land abutting on
the highway except, <u>however</u>, <u>such</u> <u>vacation</u>
<u>shall</u> <u>reserve</u> <u>to</u> <u>any</u> <u>public</u> <u>utility</u> <u>with</u> <u>fa-</u>
<u>cilities</u> <u>located</u> <u>in</u>, <u>under</u>, <u>over</u>[,] <u>or</u> <u>upon</u>
<u>the</u> <u>land</u> <u>an</u> <u>easement</u> <u>for</u> <u>the</u> <u>continued</u> <u>use</u>,
<u>if</u> <u>any</u>, <u>by</u> <u>such</u> <u>public</u> <u>utility</u>." (Emphasis
added.)  605 ILCS 5/9-127(a) (West 2002).

This statute is in derogation of the common law because, as we
stated earlier, "[a] license ordinarily is revoked by a sale,
conveyance, or lease of the land, without a reservation to the

- 17 -

licensee." 25 Ill. L. & Prac. Licenses §59, at 106. Statutes in derogation of the common law must be construed in favor of the party whose common law interest is affected. J. C. Penney Co. v. Andrews, 68 Ill. App. 3d 901, 904, 386 N.E.2d 923, 926 (1979).

If the State had simply vacated the property, this provision would have applied. Verizon does not contend the State vacated the subject parcel by an "[a]ct of this State." Verizon, in its brief, acknowledges the subject parcel was sold to the Trusts as surplus property pursuant to Public Act 92-843, eff. August 22, 2002. Further, Verizon admits IDOT should have expressly reserved an easement for Verizon for its continued use of the subject parcel. The courts cannot judicially create what the State failed to grant to Verizon--an easement.

On August 4, 2005, section 9-127 was amended by adding subsection (d) pursuant to Public Act 94-476. Subsection (d) provides:

"When any highway authority determines to vacate a highway or a part of a highway under its jurisdiction, the authority may sell the vacated highway property to any third party at fair market value if (1) the authority has either a fee simple interest in the vacated highway property or a dedication of that property by statutory plat and (2) the right of first refusal with regard to the vacated highway property has been granted to

adjoining landowners for fair market value."

605 ILCS 5/9-127(d) (West 2008).

Subsection (d) provides authorization to the highway authority to sell vacated highway property to third parties at fair market value where the highway authority is the fee owner of the vacated highway property and it has granted adjoining landowners the right of first refusal. Under subsection (a), when a highway or part thereof is vacated, the vacation "shall reserve to any public utility with facilities located in, under, over[,] or upon the land an easement for the continued use, if any, by such public utility." 605 ILCS 5/9-127(a) (West 2008). While this language is not repeated in subsection (d), it arguably applies to sales of vacated property. Under subsection (a), the vacation itself requires the reservation of an easement. Subsection (d) merely adds an additional method of disposal of vacated highway property.

However, because Verizon does not contend the State vacated its interest in the property, we need not decide the issue. The State sold the 6.883-acre parcel as surplus property and did not reserve an easement to Verizon. As a result, Verizon merely held a revocable permit to place its lines on the parcel. That permit, by its express terms, did not create an easement. Accordingly, the Trusts, as subsequent fee owners, had the ability to require Verizon to remove its lines.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's

- 19 -

judgment and remand with directions to grant the Trusts' motion for summary judgment.

Reversed and remanded with directions.

MYERSCOUGH, P.J., concurs.

STEIGMANN, J., dissents.

JUSTICE STEIGMANN, dissenting:

I respectfully dissent.  The easement in this case should not be restricted to its "actual use," as that phrase is defined by the Trusts.  However, even if the easement were restricted to its actual use, the State, as the servient landowner, gave Verizon its "consent" to relocate the easement.

The Trusts argue that the trial court improperly granted Verizon's motion for summary judgment because Verizon was not entitled to maintain its cables on the 6.883-acre tract based on the express easement the Trusts' predecessors in interest granted GTE in 1965.  Specifically, the Trusts contend that (1) while the 1965 easement was a "floating" easement--that is, an easement granting GTE authority to install telecommunication cables on any part of section 26--once GTE installed the cables, its easement should have been limited by GTE's--and later Verizon's--"actual use" and, having no authority to relocate the cables GTE had installed, (2) the utility permit and agreement with the State did not amount to sufficient consent to allow Verizon to relocate its original easement.  I disagree.

### A. The Trusts' Claim That Verizon's Easement Should Have Been Limited to Its Actual Use

In support of its argument that the easement should have been limited to its actual use, the Trusts rely on Vallas, 72 Ill. App. 3d 281, 390 N.E.2d 939, and Peters, 243 Ill. App. 3d 14, 610 N.E.2d 1385.

In Vallas, the easement at issue lacked a defined width.  Vallas, 72 Ill. App. 3d at 282, 390 N.E.2d at 941.  The

- 21 -

court concluded that the width of the easement should be confined to the dimensions that were reasonably necessary to achieve the purpose for which the easement was created, as established by its actual use. Vallas, 72 Ill. App. 3d at 284, 390 N.E.2d at 942.

Similarly, in Peters, the language granting the easement at issue was not available to the parties or the court. Peters, 243 Ill. App. 3d at 18, 610 N.E.2d at 1388. As a result, the court followed the rationale in Vallas, concluding that the easement's width--which was the subject of controversy--should be restricted to the extent of its actual use. Peters, 243 Ill. App. 3d at 18-19, 610 N.E.2d at 1388-89.

Unlike Vallas and Peters, however, the easement in this case was definite. "Actual use" is only an issue when the parameters of an easement are in question because those parameters put the parties and subsequent purchasers on notice of its existence, size, and location (see Peters, 243 Ill. App. 3d at 18-19, 610 N.E.2d at 1389 ("where an easement granted by deed is undefined as to its location and width, the dimensions depend upon the intent of the parties, which can be shown by the extent of the actual use" (emphasis added))). The original 1965 easement in this case--which was recorded--specifically delineated that it encompassed all of section 26. Thus, subsequent bona fide purchasers would have been on notice that Verizon's cables could have been buried on any part of section 26. The fact that the Trusts and the Perbix family had some general knowledge of the cables' original location is of no moment, as they should be

- 22 -

treated as any other bona fide purchaser.

B. The Trusts' Claim That the Utility Permit Was Insufficient To Demonstrate Its Intent To Allow Verizon To Relocate Its Easement

The Trusts further contend that, having no authority to relocate the cables GTE had installed, the utility permit was insufficient to demonstrate the State's intent to allow Verizon to relocate its easement. The majority agrees with the Trusts, citing the following excerpt from Peters:

> "'[W]here an easement granted by deed is
> undefined as to its location and width, the
> dimensions depend upon the intent of the
> parties, which can be shown by the extent of
> the actual use. Consequently, '"[w]hen the
> character of [the] easement is once fixed, no
> material alterations can be made by either
> the servient or easement owner without the
> other's consent.'"' [Citations.]" (Emphasis
> added.) Slip op. at 10.

Accordingly, consent was the only requirement necessary to effectuate the reallocation of the cables. To be clear, the law requires "consent" to relocate, not the granting of a new easement. Here, the State, through IDOT--the then-servient landowner--gave such consent. The utility permit--like the documents in this record that show that the cables were moved with the financial assistance of the State--was merely evidence of such consent.

In support of its conclusion that Verizon was not

granted permission to move its easement, the majority notes that "although GTE tried to acquire an easement from the Perbix family in order to relocate its lines, it never sought an easement from the State.  It requested and received only a permit."  Slip op. at 11.  Of course it did.  GTE never sought an easement from the State because it already had one.  It was merely seeking consent to relocate its lines within an easement it already had on land owned by the State.

The majority also points to the language of (1) the utility permit and (2) section 530.40(b) of Title 92 of the Administrative Code to demonstrate that the permit should not be construed to grant the permit's holder an easement or any other property interest for that matter.  This language would be significant if the State had granted Verizon an interest in land.  However, as previously stated, it did not.  Instead, the State granted Verizon--in part, by way of permit--consent to relocate a property interest it already had in land owned by the State.