2021 IL App (1st) 201005-U
Order filed: May 21, 2021

FIRST DISTRICT
FIFTH DIVISION

No. 1-20-1005

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| J & B SIGNS, INC., and CHICAGO TITLE LAND TRUST COMPANY, as Trustee Under Trust Number 301023-05, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | No. 11 CH 36912 |
| v. | ) ) | |
| COMMONWEALTH EDISON COMPANY, | ) ) | Honorable Sophia H. Hall, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Following a bench trial, the court ruled in favor of defendant on plaintiffs' claim in their fourth amended complaint for ejectment. We affirmed, holding that the court's judgment was not against the manifest weight of the evidence and that the court did not abuse its discretion in denying plaintiffs leave to file a fifth amended complaint. Plaintiffs waived review of their appeal of the dismissal of the trespass count.

¶ 2    Plaintiffs, J&B Signs, Inc. (J&B) and Chicago Title Land Trust Company, as trustee under

trust number 301023-05 (CTLTC), filed a fourth amended complaint against defendant,

Commonwealth Edison Company (ComEd) under the Ejectment Act (735 ILCS 5/6-101 (West

2014)). The litigation involved a strip of land (the Property) belonging to plaintiffs upon which ComEd had installed utility poles with attached electric transmission lines (the facilities). Plaintiffs sought the removal of the facilities as they allegedly were interfering with the Property's best use, specifically, with the placement of billboards that plaintiffs could rent to advertisers for millions of dollars. A bench trial was held and the trial court ruled in favor of ComEd, finding that plaintiffs had waived their ejectment claim. On appeal, plaintiffs argue that the court erred by: (1) finding that they waived their ejectment claim and ruling in favor of ComEd at the conclusion of the bench trial; (2) dismissing their trespass claim which they had pleaded in their earlier, second amended complaint; and (3) denying them leave to file a fifth amended complaint. We affirm.

¶ 3    We set forth the procedural history of this case in some detail, including relevant communications between the parties and the multiple pleadings filed, as they are relevant to the waiver issue.

¶ 4    J&B is an outdoor advertising company that owns or leases real estate upon which it maintains billboards. J&B rents space on the billboards to advertisers. At all relevant times, J&B acted through its president and sole shareholder, Robert Hoelterhoff.

¶ 5    The Property consists of three parcels, designated parcels 1, 2, and 3, located north of North Avenue, south of Grand Avenue, east of County Line Road, and west of I-294. Parcel 1 is not contiguous to parcels 2 and 3. Parcel 1 is the northernmost parcel and parcel 3 is the southernmost parcel.

¶ 6    In 1980, the Chicago and North Western Railroad (CNW) owned the Property and in that year, it granted ComEd a license (License) to maintain and use an electric transmission line over the Property for the sole purpose of conveying electric current not to exceed 34.5 kilovolts (KV)

for power and lighting. Pursuant to the License, ComEd maintains the facilities on the Property to convey the electricity.

¶ 7    In pertinent part, paragraph 3(e) of the License states that

"[i]f at any time it shall be necessary in the judgment of [CNW] to change the location, elevation or method of construction or installation of said facility, such change will be made by the Licensee [ComEd], at its sole expense, and in the manner requested by [CNW], within thirty (30) days after receipt of written notice thereof from [CNW]."

¶ 8    Paragraph 5 of the License states that CNW

"shall have the right to use, occupy and enjoy its tracks and property *** as [CNW] shall desire ***. If any such railroad use shall necessitate any change in the location or construction of said facility, or any part thereof, such change shall be made by [ComEd], at its own cost and expense, upon demand of [CNW]."

¶ 9    Paragraph 10 of the License states that

"[t]his license is personal to the Licensee, and is not assignable or transferable without the written consent of [CNW] first obtained."

Paragraph 10 was consistent with the rule in common law that a license is personal and lasts only as long as the land belongs to the grantor and therefore it is automatically revoked by the sale or conveyance of the land unless the grantor reserves an easement protecting the license it granted the licensee ("a protective easement"). *Champaign National Bank v. Illinois Power Co.*, 125 Ill. App. 3d 424, 429 (1984); *Perbix v. Verizon North, Inc.*, 396 Ill. App. 3d 652, 661 (2009).

¶ 10    On October 1, 1995, CNW merged with Union Pacific Railroad (UPRR). On March 25, 1998, UPRR conveyed title to the Property to J&B via a quitclaim deed without reserving a

protective easement. Legal title to the Property was subsequently conveyed in trust to CTLTC on behalf of J&B, its sole beneficiary.

¶ 11     At various times, J&B received permits from the Illinois Department of Transportation (IDOT) to construct multiple double-faced billboards on the property so as to rent them to advertisers. J&B alleges that it has been unable to construct the billboards because: (1) ComEd's facilities make it unsafe and impossible to do so; and (2) ComEd's facilities would impede or block the view of the billboards from I-294, making it difficult or impossible for the traveling public to read the billboard messages with the result that the billboards are of little to no value for outdoor advertising.

¶ 12     On January 28, 2003, Larry Duffin, J&B's lease manager, contacted George Welter, an external affairs manager for ComEd and requested that ComEd relocate its facilities by burying the transmission wires so that J&B could construct the billboards on the Property. Duffin faxed Welter a copy of the License, stating that "J&B Signs feels [that the License] covers the property in question" and that paragraphs 3(e) and 5 of the License required ComEd to relocate the facilities at its expense pursuant to J&B's request.

¶ 13     ComEd's assistant general counsel, Edward Malstrom, sent Duffin a letter dated February 25, 2003, noting Duffin's assertion that J&B is the "owner of the property covered by the License" and succeeded to the rights of CNW. Malstrom rejected J&B's request for ComEd to relocate its facilities at its expense, stating that the License did not require ComEd to bear the cost of burying the transmission wires.

¶ 14     On March 19, 2003, Duffin sent Malstrom a letter acknowledging ComEd's refusal to "bury, relocate or remove its facilities from our property" and stated that J&B will now "consider

other options that will allow us to develop our property at this location." J&B would be in contact with ComEd to advise it of "[J&B's] position on this matter."

¶ 15    On December 8, 2004, Duffin sent a fax to Art Barsema, director of external affairs for ComEd, stating:

> "J&B Signs purchased the subject property from [UPRR] that is approximately 2 miles long and 17' wide. There is a License from [UPRR] to ComEd for a 34.5 KV line that runs north and south along the property that is now owned by J&B Signs. There is a provision in the License that states ComEd would remove/relocate the pole line at the request of the RR or any assigns that the railroad may transfer the property."

¶ 16    Duffin further stated that ComEd's pole line was preventing J&B from developing billboards on the Property and that he had met with Welter and with John Pribich from ComEd's real estate department to review the site and pole locations and that they had promised to "get back to us regarding this issue." However, the only response that J&B had received came from Malstrom, who opined that the License did not require it to remove and/or relocate the facilities at ComEd's expense. Duffin asked Barsema for a meeting "to resolve these issues so that ComEd can continue to provide service in this area and J&B Signs can develop its property."

¶ 17    On February 8, 2005, Malstrom sent a letter to Karl Wilt, J&B's general manager, reiterating ComEd's belief that it was "entitled to maintain our facilities on the Subject Property." Malstrom stated that ComEd was prepared to discuss relocation of its facilities, but that "any such relocation would have to be at the sole cost and expense of J&B."

¶ 18    On January 17, 2008, Thomas Walsh, a J&B consultant, wrote a memo to Tom Selinger, an executive with Ameren, a holding company for several power and energy companies. Walsh sought Selinger's help in resolving J&B's dispute with ComEd. Walsh wrote:

"Bob Hoelterhoff, through his wholly owned entity J&B Signs, purchased excess railroad land from the Union Pacific Railroad approximately ten (10) years ago. This property is about two (2) miles long and has varying degrees of width. Essentially running down the center of this property (for the entire 2 mile length), are ComEd wooden power poles that exist pursuant to a license granted to ComEd by the prior owner, the railroad. J&B is a successor-in-interest to the railroad and therefore assumes the railroad's (i.e. the landowner's position) relative to that license. Bob desires to have ComEd remove its equipment (in its entirety) from his property." *** J&B's position is that it can enforce its rights relative to the license agreement in a court of law."

¶ 19 On July 6, 2011, Robert Weber, J&B's attorney, sent a letter to Frank M. Clark, the Chairman and Chief Executive Officer of ComEd, stating:

"In reliance upon the *** 1980 license (the 'License') from Chicago Northwestern Transportation Company, ComEd maintains approximately forty (40) poles and as many as thirteen (13) lines (the 'Facilities') on property located west of I-294, east of County Line Road and between Grand and North Avenues in Northlake, Illinois (the 'Property'). J&B owns the Property but cannot construct advertising structures there because of ComEd's facilities."

¶ 20 Weber stated that ComEd "is violating the License" by maintaining 13 lines conveying electrical current exceeding 34.5 KV and is trespassing, but that if ComEd would cantilever the transmission lines or bury them underground, then J&B "will re-write the License to accommodate ComEd's current use of the Property."

¶ 21 ComEd did not agree to cantilever the transmission lines or bury them underground.

¶ 22    On October 24, 2011, J&B filed its initial complaint for declaratory judgment, injunction, and damages against ComEd. In count I, J&B sought a declaration that under the License, ComEd must comply with its request to change the location, elevation and/or method of construction or installation of the facilities to permit J&B to safely and effectively maintain and construct the proposed billboards on the Property. J&B asked for a mandatory injunction to that effect. In count II, J&B sought damages for ComEd's breach of the License. In count III, J&B alleged that ComEd was trespassing on the Property by maintaining more than one transmission line, by permitting others to maintain lines on and over the Property, and by maintaining underground footings for its transmission towers located on the adjacent I-294 right of way. J&B sought a mandatory injunction directing ComEd, at its cost, to "remove from the Subject Property all footings of its Transmission Towers."

¶ 23    There was no allegation in the complaint that the License had automatically terminated when UPRR conveyed the Property to J&B without reserving a protective easement in March 1998.

¶ 24    J&B further asserted its rights under the License in its sworn answers to ComEd's first set of interrogatories in January 2013. In those answers, J&B stated that ComEd breached the License by failing to change the location, elevation, or method of construction of its facilities on the Property and that the breach was ongoing. J&B did not assert in those answers that the License had automatically terminated upon UPPR's conveyance of the Property to J&B in March 1998 without reserving a protective easement.

¶ 25    Following J&B's answers to ComEd's first set of interrogatories, CTLTC was added as a plaintiff.

¶ 26    On January 24, 2013, plaintiffs J&B and CTLTC filed an amended complaint against ComEd again asserting a claim for breach of the License. Plaintiffs did not assert or plead in the alternative that the License automatically terminated upon UPRR's conveyance of the Property to J&B in March 1998 without reserving a protective easement.

¶ 27    On July 18, 2013, plaintiffs filed their second amended complaint alleging, for the first time, that the License automatically terminated on March 25, 1998, when UPRR conveyed title to the Property to J&B via a quitclaim deed without reserving a protective easement. In count I, plaintiffs alleged that ComEd's refusal to remove its facilities from the Property constituted a continuing trespass. Plaintiffs sought a mandatory injunction directing ComEd to remove the facilities from the Property, at its expense, and to pay plaintiffs damages. In count II, plaintiffs alleged that assuming the License was *not* automatically terminated by UPRR's conveyance of title to the Property to J&B without a protective easement, then plaintiffs are entitled to damages for ComEd's various breaches of the License as well as a mandatory injunction requiring ComEd to remove the facilities at its expense. In count III, plaintiffs sought a declaratory judgment that the License was terminated or, if the court finds that it remains in effect, a declaratory judgment that ComEd must comply with J&B's request to change the location, elevation and/or method of construction of the facilities.

¶ 28    ComEd filed a motion to dismiss plaintiffs' second amended complaint, arguing that their trespass claims are barred by the five-year limitations period set forth in section 13-205 of the Code of Civil Procedure (Code) (735 ILCS 5/13-205 (West 2012)) and that the contract claims are barred by the 10-year limitations period set forth in section 13-206 of the Code (735 ILCS 5/13-206 (West 2012)). On August 12, 2014, the trial court dismissed plaintiffs' trespass action for damages and their breach of contract claims on limitations grounds.

¶ 29    On May 8, 2015, plaintiffs filed their third amended complaint realleging that the License automatically terminated when UPRR transferred the Property to J&B in March 1998 via a quitclaim deed without reserving a protective easement. Count I alleged, for the first time, a cause of action under the Ejectment Act (735 ILCS 5/6-101 (West 2014)) and sought removal of ComEd's facilities from the Property as well as damages. Count II alternatively alleged that ComEd committed various breaches of the License.

¶ 30    ComEd filed a motion to dismiss the damages claim in count I of plaintiffs' third amended complaint for ejectment, arguing that the claim is barred by the five-year limitations period set forth in section 13-205. ComEd sought to dismiss count II in its entirety as it realleged the same breach of contract claims that had previously been dismissed on limitations grounds and was brought only to preserve appeal rights.

¶ 31    On October 2, 2015, the trial court denied ComEd's motion to dismiss the damages claim in count I for ejectment. The court granted ComEd's motion to dismiss count II.

¶ 32    On February 9, 2016, plaintiffs filed their fourth amended complaint to correct scrivener's errors in the third amended complaint. Count I again alleged a cause of action under the Ejectment Act based on the automatic termination of the License. Count II again alleged breach of the License and was brought to preserve plaintiffs' appeal rights.

¶ 33    On February 23, 2016, ComEd filed an affirmative defense arguing that from the time J&B took title to the Property in March 1998, until the filing of the second amended complaint in July 2013, J&B had engaged in a course of conduct whereby it repeatedly asserted its rights under the License to remove ComEd's facilities from the Property. ComEd argued that J&B's course of conduct constituted a waiver of its right to now assert a cause of action for ejectment based on the

theory that the License had automatically terminated upon the transfer of title to it in March 1998 without the reservation of a protective easement.

¶ 34    On January 4, 2018, the Illinois State Toll Highway Authority (ISTHA) took title to the Property under eminent domain. On February 16, 2018, plaintiffs filed a motion for leave to file a fifth amended complaint to revive their trespass claim that had been dismissed almost four years earlier. Plaintiffs argued in their motion for leave to amend that the January 4 order vesting title to ISTHA mooted their prayer for possession of the Property, requiring them to bring a trespass count instead. ComEd replied that the loss of title did not warrant amendment because plaintiffs still could recover damages under the Ejectment Act. In response, plaintiffs withdrew their February 2018 motion for leave to amend, acknowledging that ComEd was correct in arguing that they could still recover damages under the Ejectment Act.

¶ 35    ComEd brought a motion *in limine* to bar plaintiffs' claim for lost profits, arguing they were not recoverable under the Ejectment Act. The trial court granted the motion on the second day of trial. Plaintiffs then renewed their motion for leave to file a fifth amended complaint adding a trespass count. The trial court denied plaintiffs' motion for leave to file a fifth amended complaint.

¶ 36    At the bench trial held on plaintiffs' ejectment count, Hoelterhoff testified in pertinent part that when he was negotiating with UPRR on behalf of J&B to purchase the Property, he inspected the Property and became aware of ComEd's facilities thereon. The License granting ComEd the right to place the facilities on the Property was made available to Hoelterhoff sometime prior to the 1998 closing on UPRR's sale of the Property to J&B, but he did not "[get] around to look at it" until after the closing. Hoelterhoff further testified that since 2000 he had one or two

conversations per year with ComEd representatives in an unsuccessful attempt to convince ComEd to remove its facilities from the Property so that J&B could put up its billboards.

¶ 37    Thomas Walsh, a J&B consultant who advised J&B about obtaining permits from IDOT and did some consulting on legal issues, testified that he read the License sometime prior to 2008 and hired two electric companies, a ground radar service, and a surveyor to investigate whether and how ComEd was breaching the License.

¶ 38    The court heard testimony from a number of other witnesses regarding damages. Their testimony is not pertinent to our resolution of the issues on appeal and need not be summarized here.

¶ 39    The court admitted into evidence the various written communications between J&B and ComEd from 2003-2011 which we discussed earlier in this order, regarding J&B's attempts to enforce the License's requirement that ComEd remove the facilities from the Property at its expense.

¶ 40    At the conclusion of all the evidence, the trial court entered a written judgment finding that J&B knew or should have known that the License automatically terminated on March 25, 1998, when UPRR conveyed title to the Property to J&B without reserving a protective easement. As a result of the automatic termination, J&B could have sought ComEd's ejection from the Property as soon as it closed on the sale.

¶ 41    The court also found that J&B's course of conduct from March 1998 to July 2013, in which it attempted to *enforce* the License's requirement that ComEd remove the facilities from the Property, demonstrated its intent to waive its right to eject ComEd based on the automatic termination of the License. Accordingly, the court entered judgment in favor of ComEd on plaintiffs' ejectment action.

¶ 42 The court found that as J&B had waived its claim for ejectment, a determination of damages was unnecessary and would be dicta. However, as extensive evidence was presented on the issue of damages, the court reviewed the damages evidence anyway and concluded that plaintiffs "fail[ed] to prove damages to a reasonable degree of certainty." We need not address the damages evidence or the court's findings thereon because as discussed later in this order we affirm the court's finding that J&B waived its claim for ejectment.

¶ 43 We proceed to address plaintiffs' appeal. Plaintiffs' first argument is that the court erred by entering judgment for ComEd on their ejectment claim. In a bench trial the trial court weighs the evidence and makes findings of fact and we defer to the court's factual findings unless they are against the manifest weight of the evidence. *Cahnman v. Timber Court LLC*, 2021 IL App (1st) 200338, ¶ 84. A finding is against the manifest weight of the evidence only when the opposite conclusion is apparent or when the finding is unreasonable, arbitrary, or not based on the evidence. *Id.*

¶ 44 The issue on appeal is whether the trial court erred in finding that J&B waived its right to assert a cause of action for ejectment based on the theory that the License had automatically terminated in March 1998 when UPRR conveyed the property to it via a quitclaim deed without reserving a protective easement. Waiver is defined as the intentional relinquishment of a known right. *Ryder v. Bank of Hickory Hills*, 146 Ill. 2d 98, 104-05 (1991). Waiver may be made by express agreement or may be implied from the conduct of the party who is alleged to have waived the right. *Id.* at 105. Implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed the waiver. Id. " 'An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with

any other intention than to waive it.' " *Id.* (quoting *Kane v. American National Bank & Trust Co.*, 21 Ill. App. 3d 1046, 1052 (1974)).

¶ 45    Plaintiffs contend that there was no waiver here because J&B's president, Hoelterhoff, did not know until the filing of the second amended complaint in July 2013 of the right alleged to have been waived, specifically, the right to deem that the License automatically terminated on March 25, 1998, when UPRR conveyed the property to it via a quitclaim deed without reserving a protective easement.

¶ 46    A party may waive a right of which it only has constructive knowledge. *Egan v. Steel*, 137 Ill. App. 3d 539, 543 (1985). Constructive knowledge is defined as "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." Black's Law Dictionary (7th ed. 1999). Hoelterhoff testified at trial that at the time of the closing on J&B's purchase of the Property, he was aware of ComEd's facilities thereon, which was the subject of the License. Hoelterhoff further testified:

"Q. So to the extent that you had the [License] after the J&B purchase, presumably was delivered to J&B before the closing, correct?

A. Correct.

Q. And you may not have gotten around to look at it, but you did that sometime after the closing in 1998, correct?

A. Yes.

Q. But it was available to you to look at even before that?

A. Yes."

¶ 47    Hoelterhoff's testimony reveals that prior to the closing on the sale of the Property to J&B on March 25, 1998, he was provided the License governing ComEd's placement of the facilities

thereon which expressly states in paragraph 10 that it was personal to ComEd and was not assignable or transferable without written consent of CNW. Hoelterhoff's testimony supports a finding that at or before the time of closing, through reasonable diligence, he could and should have read the License governing ComEd's placement of the facilities on the Property. Therefore, Hoelterhoff is charged with the constructive knowledge, as of the time of closing, of the information contained in paragraph 10 of the License regarding its being personal to ComEd and limiting its transferability. Hoelterhoff is also charged with the knowledge of his agents, Duffin, Walsh, and Weber, whose communications with ComEd and/or Ameren from 2003 to 2011 indicate that they had read the License which included paragraph 10. See *McRaith v. BDO Seidman, LLP*, 391 Ill. App. 3d 565, 589 (2009) (the knowledge and conduct of agents are generally imputed to their principals).

¶ 48    Plaintiffs argue that paragraph 10 addressed certain limitations on *ComEd's* ability to assign or transfer its License to a third party without CNW's (or its successor railroad's) consent but that paragraph 10 "does not hint at automatic termination after UPRR transfers title." Therefore, plaintiffs contend that even if Hoelterhoff had constructive knowledge of paragraph 10, he was not put on notice of the License's automatic termination as of the date of UPRR's conveyance of the Property to J&B without a protective easement.

¶ 49    Plaintiffs' argument is unavailing, as there is a long-standing common law rule providing that a license is personal and lasts only as long as the land belongs to the grantor and therefore it is automatically revoked by the sale or conveyance of the land unless the grantor reserves a protective easement. *Champaign National Bank*, 125 Ill. App. 3d at 429; *Perbix*, 396 Ill. App. 3d at 661. As a general principle of contract law, common law decisions and rules relevant to the contract are considered a part thereof and are presumed to be known by the parties to the contract.

See *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 217 (1997). Hoelterhoff was a party to the purchase agreement resulting in UPRR's conveyance of the Property to J&B and he received the deed that on its face did not provide for a protective easement, and he is charged with knowledge of the common law rule providing that the conveyance without a protective easement resulted in the automatic termination of the License.

¶ 50    Accordingly, the trial court's finding that Hoelterhoff had constructive knowledge of the automatic termination of the License as of the conveyance of the Property to J&B in March 1998 without a protective easement is not against the manifest weight of the evidence.

¶ 51    Plaintiffs next argue that ComEd failed to show the second component of the waiver defense, that J&B *intended* to waive the right to eject ComEd from the Property based on the automatic termination of the License. The trial court found that J&B's attempt to enforce the License for 15 years from March 1998 to July 2013 amounted to a course of conduct implying an intent to waive its right to assert that the License had automatically terminated upon UPRR's transfer of the Property to J&B via a quitclaim deed without reservation of a protective easement in March 1998.

¶ 52    The evidence at trial, which we discussed in some detail earlier in this order, supports the trial court's finding. During the 15-year time period from March 1998 to July 2013, nobody from J&B ever informed ComEd of its intent to assert that the License had automatically terminated as of the date of the transfer of the property to J&B in March 1998, nor did anyone from J&B ever enter into any negotiations with ComEd premised on the automatic termination of the License. Rather, J&B's representatives, Hoelterhoff, Duffin, and Weber, repeatedly communicated with ComEd executives and attorneys and attempted to *enforce* paragraphs 3(e) and 5 of the License, arguing that those paragraphs required ComEd to remove/relocate the facilities from the Property

at its expense. Welsh hired two electric companies, a ground radar service, and a surveyor to investigate ComEd's breaches of the License and contacted an Ameren executive to help with resolving J&B's dispute with ComEd, specifically noting J&B's intention to "enforce its rights relative to the license agreement."

¶ 53     When its efforts to amicably enforce the License failed, J&B filed its initial complaint against ComEd in October 2011 and its amended complaint in January 2013 asserting its legal right to enforce paragraphs 3(e) and 5 of the License and to require ComEd to remove the facilities from the Property at its expense. J&B did not alternatively plead in its initial and amended complaints that the License automatically terminated upon UPRR's conveyance of the Property to J&B in March 1998 without a protective easement. In its answers to ComEd's first interrogatories in January 2013, J&B continued to assert its right to enforce the License and did not assert the automatic termination of the License until the filing of the second amended complaint in July 2013.

¶ 54     Plaintiffs' argument is that notwithstanding J&B's failure to assert the automatic termination of the License until July 2013, their intent has always been to have ComEd remove the facilities from the Property at its expense so that J&B could erect billboards thereon. There were two methods to effectuate that intent: (1) to enforce paragraphs 3(e) and 5 of the License; or (2) to eject ComEd from the Property based on the automatic termination of the License upon UPRR's conveyance of the Property to J&B in March 1998 without a protective easement. Plaintiffs contend that the two methods for removal are not inconsistent with each other as they have the same goal of ultimately allowing for the erection of billboards on the Property and that the utilization of the first method for ComEd's removal from the Property did not imply an intent to forego the second method. In rejecting plaintiffs' argument, the trial court noted that J&B had only utilized the first method, the attempted enforcement of the License, for the 15-year period

from March 1998 to July 2013 and had never once asserted the automatic termination of the License during that time-frame. The court found that J&B's 15-year attempt to enforce the License indicated its implied intent to rely only on that particular method for removing ComEd's facilities from the Property. We cannot say that the court's finding was against the manifest weight of the evidence.

¶ 55    Plaintiffs argue that we should reverse the trial court's judgment because ComEd failed to show how it was prejudiced by J&B's waiver. Plaintiffs' argument is unavailing as a showing of prejudice is not an essential element of waiver. See *Vaughn v. Speaker*, 126 Ill. 2d 150, 161-62 (1988) ("a waiver does not necessarily imply that the party asserting it has been misled to his detriment").

¶ 56    Next, plaintiffs argue that the trial court erred by dismissing, on statute of limitations grounds, their claim in count I of the second amended complaint for damages resulting from ComEd's trespassing. In its motion to dismiss, ComEd argued that plaintiffs brought the action more than five years after the trespass began in violation of the five-year limitations period set forth in section 13-205 of the Code. Plaintiffs countered that the trespass was a continuing one such that the limitations period does not begin to run until the tortious acts cease (*i.e.*, when ComEd removes the facilities from the Property). The trial court rejected the argument that the trespass was a continuing one, found that the five-year limitations period set forth in section 13-205 was applicable, and granted ComEd's motion to dismiss. The court stated, "Count I, although the trespass claims for money damages are [dismissed] on limitations grounds, stands as a claim for ejectment, a claim for possession of the property."

¶ 57    Plaintiffs subsequently filed their third and fourth amended complaints, alleging a cause of action for ejectment but not for trespass. Our supreme court has held that "a party who files an

amended pleading waives any objection to the trial court's ruling on the former complaints" and " '[w]here an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn.' " *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153-54 (1983) (quoting *Bowman v. County of Lake*, 29 Ill. 2d 268, 272 (1963)).

¶ 58    Plaintiffs did not replead their separate cause of action for trespass in their third and fourth amended complaints and therefore waived review of the trial court's dismissal of that claim. *Id.* at 155. We recognize that in their ejectment count, plaintiffs pleaded that ComEd's refusal to remove the facilities from the Property made it a "trespasser," but this general reference to ComEd's alleged trespass was made to show that ComEd was unlawfully withholding possession of the Property from J&B, which is one of the elements plaintiffs must prove in their ejectment claim. See 735 ILCS 5/6-109 (West 2014). A simple footnote or paragraph in the third and fourth amended complaints notifying ComEd and the trial court that plaintiffs were preserving the trespass count for appeal, in addition to the ejectment count, would have been sufficient to avoid the consequences of the *Foxcroft* rule (see *Tabora v. Gottlieb Memorial Hospital*, 279 Ill. App. 3d 108, 114 (1996)), but plaintiffs failed to so notify ComEd and the court of its intent to preserve the trespassing count for appeal and therefore the issue is waived for review.

¶ 59    Next, plaintiffs argue that the trial court erred by denying them leave to file a fifth amended complaint on the second day of trial on December 11, 2018, to allege a claim of "intentional trespass." Plaintiffs do not have an absolute and unlimited right to amend. *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 6 (2004). The decision to grant leave to amend rests within the sound discretion of the trial court. *Id.* at 7. The relevant factors to consider when determining whether the trial court abused its discretion in denying leave to amend are: " '(1)

whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified.'" *Id.* (quoting *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992)). Plaintiffs must meet all four *Loyola Academy* factors. *Hayes Mechanical, Inc.*, 351 Ill. App. 3d at 7.

¶ 60    Plaintiffs argue that they sought leave to file their fifth amended complaint on December 11, 2018, only after the court granted, earlier that same day, ComEd's motion *in limine* barring their claim for lost business profits under the Ejectment Act. Plaintiffs contend they were surprised by the court's grant of the *in limine* motion and that they immediately and timely sought leave to file the fifth amended complaint containing the trespass claim to cure the defective pleading and allow them to bring a viable claim for lost business profits. ComEd counters that the relevant starting point for determining the timeliness of plaintiffs' proposed fifth amended complaint is not the court's December 11, 2018, order granting its motion *in limine*, but rather the August 14, 2014, order dismissing plaintiffs' trespass claim in their second amended complaint on limitations grounds. ComEd contends that "[i]f plaintiffs thought they had a basis to revive their trespass claim, then they could have filed a motion to do so at any time after the August 14, 2014, dismissal." ComEd argues that plaintiffs' four-year delay in filing the motion for leave to amend until the second day of trial on December 11, 2018, rendered it untimely. ComEd also argues that the proposed fifth amended complaint did not cure the "defect" that resulted in the dismissal of the trespass count in the second amended complaint on limitations grounds, as the trespass claim alleged in the fifth amended complaint remained untimely and barred by the five-year limitations period.

¶ 61    We need not resolve the parties' competing arguments regarding the timeliness of the proposed fifth amended complaint or whether it cured any prior defective pleadings, as we may affirm the trial court's denial of leave to amend because ComEd would have been surprised and prejudiced by the amendment. Plaintiffs' claim for intentional trespass requires a showing of " 'a high degree of certainty that an intrusion of another's property will result from the act of the defendant.' " *Illinois Bell Telephone Co. v. City of Highland Park*, 214 Ill. App. 3d 15, 30 (1991) (quoting *Dial v. City of O'Fallon*, 81 Ill. 2d 548, 555 (1980)). There is no such element in an ejectment claim. See 735 ILCS 5/6-109 (West 2014) (setting forth the elements to be pleaded for an ejection action). ComEd did not conduct any discovery with respect to the "high degree of certainty" requirement for an intentional trespass claim and was not prepared to immediately try a case with that element. Accordingly, we find no abuse of discretion in the trial court's decision to deny plaintiffs' motion on the second day of trial for leave to file their fifth amended complaint containing an intentional trespass count.

¶ 62    For all the foregoing reasons, we affirm the circuit court. As a result of our disposition of this case, we need not address the arguments on appeal related to damages.

¶ 63    Affirmed.